## GUST VIITA v. JAMES FLEMING.[1]

January 21, 1916.

Nos. 19,598—(193).

**Malpractice — Evidence of lack of skill.**

1. Assuming that the relation of patient and physician existed between plaintiff and defendants, the evidence was sufficient to justify the jury in finding that the physician failed to exercise towards the patient that degree of care and skill which the law requires.

**Defendants bound to use ordinary skill in treating plaintiff.**

2. Plaintiff's employer had an arrangement with defendants, physicians, who operated a hospital in Cloquet, by which the employer deducted a certain sum each month from the pay of each employee, and turned over the sums so deducted to defendants, who agreed, for such compensation, to care for and treat all injured employees which the employer should send to them. Plaintiff was injured and was taken to defendants' hospital and treated by them under this arrangement. It is *held* that the relation of patient and physician existed between plaintiff and defendants, and that the latter owed plaintiff the duty to exercise ordinary care and skill in treating him.

**Workmen's Compensation Act — settlement — malpractice not included.**

3. A settlement between plaintiff and his employer under the Workmen's Compensation Act, by which the employer was released from all claims on account of the injury to plaintiff, did not operate as a settlement or release of any claim for malpractice which plaintiff might have against the physicians who treated him.

**Damages not excessive.**

4. The damages awarded are not excessive.

**Admission of evidence.**

5. Certain rulings of the trial court on the admission of evidence *held* not erroneous.

**Request to charge — reasonable skill of physician in similar localities.**

6. The trial court refused to instruct the jury as requested that defend-

[1] Reported in 155 N. W. 1077.

Note.—As to degree of care and skill required of physician or surgeon, see note in 37 L.R.A. 830.

ant was bound to possess and exercise only the reasonable degree of care and skill possessed and exercised by physicians and surgeons *in similar localities* to that in which defendant practised, and is protected from the charge of negligence if he adopts and uses, in performing an operation, the methods in use among competent surgeons *in the locality* in which the operation takes place. In its general charge the court instructed the jury the defendant was required to exercise such reasonable care and skill as an ordinary physician or surgeon in good practice would exercise under like circumstances, and that among the circumstances to be considered was the *location* of the physician in Cloquet rather than in Duluth, St. Paul or some other place. It is *held* that the court, in refusing to give the requested instructions and giving instead the instructions quoted, committed no reversible error.

**Interest of insurance company — question disapproved.**

7. While the jury was being selected defendant's attorney testified that a certain company was interested in the defense of the case. Defendant was then sworn and asked if this was true. *Held* that it was not prejudicial error to overrule an objection to this question, but the conduct of plaintiff's counsel in asking the question is disapproved.

Action in the district court for Carlton county against William G. Dolan and James Fleming, copartners doing business as Dolan & Fleming and as Cloquet Hospital, to recover $15,000 for malpractice. The case was tried before Dancer, J., who when plaintiff rested denied defendant's motion to dismiss the action, and a jury which returned a verdict for $2,000 against defendant Fleming. From an order denying their motion for judgment notwithstanding the verdict or for a new trial, defendant Fleming appealed. Affirmed.

*Abbott, MacPherran, Lewis & Gilbert,* for appellant.

*Andrew Nelson* and *George B. Sjoselius,* for respondent.

BUNN, J.

Defendants were partners as physicians and surgeons at Cloquet, Minnesota. Plaintiff claims that defendant Dolan, who died after this action was commenced, was guilty of negligence and want of skill in his treatment of an injury received by plaintiff. The trial resulted in a verdict of $2,000 against defendant Fleming, who appeals from an order denying his motion in the alternative for judgment notwithstanding the verdict or a new trial.

It is contended that the verdict is not justified by the evidence. The various grounds for this contention will be noticed later. The facts are not much in dispute, and the evidence justified the jury in finding them to be as follows:

Plaintiff was in the employ of Johnson-Wentworth Company in skidding logs near Cloquet. February 5, 1914, while engaged in this employment, his left leg was fractured between the knee and ankle. Defendants operated a hospital at Cloquet and were there engaged in the practice of their profession. Johnson-Wentworth Company and defendants had an arrangement by which the company deducted 75 cents per month from the pay of each employee, and turned this over to defendants, who agreed for this compensation to care for and treat injured employees which the company should send to them. Plaintiff, after his injury, received a ticket from his employer, presented it to defendants, and was taken into the hospital and treated. Upon this state of facts defendant bases a claim that the relation of physician and patient did not exist.

Defendant Dolan attended plaintiff. The injured leg was put in a plaster cast and allowed to so remain for a period of eleven days. The cast was then removed, and a new one put on. Soon after this plaintiff observed that his left foot turned outward, and called Dr. Dolan's attention to this condition, which, however, continued to exist during his eleven weeks' stay at the hospital and existed at the time of the trial. The cause of this eversion of the foot was imperfect approximation of the fractured ends of the bones. Plaintiff claimed and the evidence tended to show that this failure to get a straight union was due to the omission of defendants to apply an extension weight to the injured limb. Negligence is also claimed in respect to their failure to use a "fracture box" or to take an X-ray photograph for the purpose of diagnosis. The evidence leaves no doubt that there was a poor result, and the inquiry on this branch of the case is whether the finding that this was due to negligence or want of skill on the part of Dr. Dolan is sustained by the evidence.

June 1, 1914, plaintiff and his employer, Johnson-Wentworth Company, agreed upon a settlement for the injuries received by plaintiff in the accident, and petitioned the court for its approval under the terms of the Workmen's Compensation Act. The court approved the settle-

ment agreed upon, which contained the provision that, when all payments thereunder have been made, "the employer shall be, and hereby is, released from all claims on account of said injury, under said act or otherwise." The claim here is that this settlement released the employer and also the defendant from all liability for negligence in the treatment of plaintiff's injury.

The principal contentions of defendant, as indicated in the above statement of facts, are: (1) Assuming that the relation of physician and patient existed, the evidence is not sufficient to justify the jury in finding that the physician failed to exercise that degree of care and skill which the law requires; (2) the relation of physician and patient did not exist; (3) the settlement between plaintiff and his employer bars this action; (4) the damages are excessive. It is further claimed that there were prejudicial errors in certain rulings on the admission of evidence, and in refusing to give certain instructions requested by defendant. There is also a claim of misconduct of counsel.

1. We have said that there is little doubt that there was a poor result. There was not a good union of the fractured ends of the bones; this resulted in a permanent eversion of the left foot, and the ankle and knee joints no longer operate on the same plane. In consequence of these conditions plaintiff tires very easily and suffers considerable soreness due to the twisting of the limbs in opposite directions. His earning capacity is materially and permanently lessened. Two experienced and apparently reputable physicians and surgeons stated positively that the result was not good, and gave their opinions that the treatment given plaintiff was improper and not good surgery. They testified that a fracture box should have been employed to hold the limb in a proper position, and an extension weight applied to draw down and overcome muscular contraction, which caused the overlapping of the fractured ends in this case. They also criticized the failure of Dr. Dolan to take an X-ray photograph to determine whether the approximation of the bones was correct. Defendants' experts gave opinions to the effect that the treatment was proper. The question was quite plainly one for the jury to decide, and we feel wholly unwarranted in saying that the jury was palpably wrong in believing the expert testimony of plaintiff's witnesses rather than that of defendants' witnesses. We need not repeat what was

said in Sawyer v. Berthold, 116 Minn. 441, 134 N. W. 120, to the effect that an expert witness may base his opinion on the result alone, and in the case at bar the opinions of the experts that the treatment was improper were based on the testimony as to what the treatment actually was, as well as upon the poor result achieved. We must hold, assuming that the relation of physician and patient existed, that the evidence sustains the finding of the jury that the physician failed in his legal duty toward the patient, and that this was the cause of the poor result. We do not see that Martin v. Courtney, 75 Minn. 255, 77 N. W. 813; 87 Minn. 197, 91 N. W. 487, or Staloch v. Holm, 100 Minn. 276, 111 N. W. 264, 9 L.R.A. (N.S.) 712, are at all decisive of the present case, or that anything said in those leading cases is of assistance to the defendant here. We fully appreciate the elements which the surgeon has to contend with in the treatment of his patient, and the injustice often involved in a charge of malpractice. The cases referred to so fully discuss these features, as do cases from other jurisdictions cited by defendant, that we can add nothing of value. The present case is simply one of conflicting expert testimony, with nothing in the facts as to the treatment, or in the probability or probative force of the evidence for defendant, that would make the granting of a new trial anything less than a usurpation of the functions of the jury.

2. The contention that the relation of physician and patient did not exist between defendant and plaintiff is based upon the facts hereinbefore stated as to the arrangement under which plaintiff was admitted to the hospital and treated by defendants. We see nothing in these facts to justify a decision that defendants did not owe plaintiff the duty to use ordinary care and skill in treating his injury. It is true that Johnson-Wentworth Company, under the terms of the compensation act, was required to provide medical and surgical treatment to the injured employee during the first 90 days of his disability and to an amount not exceeding $100. But we are unable to see how this changes the relationship between the injured employee and the physician or surgeon employed, or affects the duty of the latter to the former. It may be true in a sense that Doctors Fleming and Dolan were the agents of the employer for the purpose of minimizing the results of the injury and shortening the period of disability. Even if it be conceded that the employer might be liable

for the negligence of the physicians on this theory of agency, this is no reason why the physicians are not liable directly to the patient. It is not material that plaintiff did not know the physicians, engage their services himself, or pay the services in the ordinary way. Plaintiff in fact paid for medical and surgical treatment, and it surely can make no difference that this was by monthly deductions from his wages. Indeed it is the law that the fact that a physician or surgeon renders services gratuitously does not absolve him from the duty to use reasonable care, skill and diligence. 30 Cyc. 1573, and cases cited. In Du Bois v. Decker, 130 N. Y. 325, 29 N. E. 313, 14 L.R.A. 429, 27 Am. St. 529, it was held that a physician employed by a city to treat patients in an almshouse will not be released from liability to a patient therein for failure to exercise ordinary care and skill, although he is paid by the city and not by the patient. We do not think that Johnson-Wentworth Company would be liable for any malpractice or negligence on the part of the physicians it employed to treat its employees. Its duty was discharged when it selected a competent physician. Youngstown Park & F. St. Ry. Co. v. Kessler, 84 Oh. St. 74, 95 N. E. 509, 36 L.R.A. (N.S.) 50, and cases cited in the note to this case as reported in Ann. Cas. 1912B, 933. It seems clear that the physicians in the case at bar owed plaintiff the duty to exercise ordinary care and skill in treating his injury, and that he has the same rights and remedies that any patient has against his physician.

3. We need add little to what is said in the preceding paragraph in order to dispose of the argument that the settlement under the Workmen's Compensation Act, by which the employer was released from "all claims on account of said injury," operated as a settlement and release of any claim the employee might have against the physicians for malpractice. The employer, as we have seen, was not liable to the employee for the negligence of the physicians. It was not required to compensate plaintiff for damages sustained by their malpractice, and the settlement did not purport to include any such element. This is not contrary to the well-known rule, existing before the compensation act, that, where one is injured by the negligence of another and uses due care in the selection of a physician or surgeon, the wrongdoer is liable for all the proximate results of his own act; although the injury has been aggra-

vated by improper treatment by the physician. It by no means follows that the one whose negligence causes the original injury is liable for the negligence of the physician employed to treat it, and it is clearly not true that the physician is not liable to the patient for such negligence. When it appears, as it clearly does here, that there is a liability on the part of the physician to the patient, it is a strain to hold that a settlement between the injured man and the wrongdoer for the injury by the accident, whether made under the compensation act or outside of it, includes the claim that the injured man has against his physician for a separate and subsequent injury. Defendant cites numerous cases to support his contention, among others McNamara v. American Fruit Distributors, Case No. 159, June 9, 1914, 1 Dec. Ind. A. C. (Cal.) 138; Favero v. Board of Public Library Trustees, Case No. 111, July 3, 1914, 1 Dec. Ind. A. C. (Cal.) 225; Smith v. Cord Taton Colliery Co. 2 W. C. C. 121; Shirt v. Calico Printers' Assn. 2 British W. C. C. 342, and Beadle v. Milton, 114 L. T. 55, 5 W. C. 55. The only one of these cases that has anything to say to the point involved in the present case is Beadle v. Milton, and what is said in that case is plainly *obiter dictum.* In Humber Towing Co. v. Barclay, 5 B. W. C. C. 142, and Rocca v. Stanley Jones & Co. 7 B. W. C. C. 101, both decided subsequently to Beadle v. Milton, the *dictum* in the latter case is plainly overruled. The Humber Towing Company and the Rocca cases distinctly hold that an employer is not liable under the English Compensation Act for disability caused by the negligence of a physician who treats the injury. On the authority of these cases, as well as from the language of the compensation act, it must be held that Johnson-Wentworth Company was not liable for the disability caused by defendants' negligence and that the settlement between that company and plaintiff did not include his claim against defendants for malpractice. What has been said also disposes of the claim of error in refusing certain instructions on the subject requested by defendant.

4. We need not further discuss the evidence in order to justify the conclusion we reach that the verdict is not excessive within the rules that guide this court in the consideration of this question.

5. It was not error to permit questions to the experts in regard to the propriety of taking X-ray photographs. While it is true that this was

not specifically alleged as a charge of negligence, the complaint contained a general allegation of negligent treatment, and we think this evidence was properly received, at least as against the general objection "incompetent, irrelevant and immaterial."

Error is assigned in sustaining an objection to a question asked of defendant as to whether the treatment by a certain other physician of a fracture in another case was similar to that employed by Dr. Dolan in the case at bar. That this ruling was proper is plain, but it is perhaps not so clear that the trial court was right in refusing to permit defendant to testify that, judging from his observation and experience in the vicinity of Cloquet, the treatment applied by Dr. Dolan was that used by physicians of ordinary care, skill and caution in and about the vicinity of Cloquet. We think, however, that the ruling should be sustained, on the ground that the standard of care and skill was too limited by the question. It is not the law that defendants' conduct of the case is to be judged by the degree of skill and care exercised by other physicians in the same village, and we hold that there was no error in sustaining the objection. The question is further discussed in the next paragraph. As to the other rulings on the admission of evidence that are assigned as error, we find nothing to merit special mention.

6. The trial court refused to give the instruction, requested by the defendant, which was to the effect that defendant was bound to possess and exercise only that reasonable and ordinary degree of care and skill possessed and exercised by physicians and surgeons engaged in the same general line of practice in *similar localities* to that in which defendant practised, and is protected from the charge of negligence if he adopts and uses in performing an operation the methods in use among competent surgeons *in the locality in which the operation takes place.* In its general charge the court instructed the jury that the defendant Dolan was required to exercise such reasonable care and skill as an ordinary physician or surgeon in good standing would exercise under like circumstances, and that, among the circumstances to be considered, was the *location* of the physician in Cloquet rather than in Duluth, St. Paul or some other place.

The decisions in this state do not touch upon the question of the locality in which the physician or surgeon practises as affecting the de-

gree of care and skill he is required to possess and exercise. Getchell v. Hill, 21 Minn. 464; Martin v. Courtney, 75 Minn. 255, 77 N. W. 813; 87 Minn. 197, 91 N. W. 487; Henslin v. Wheaton, 91 Minn. 219, 97 N. W. 882, 64 L.R.A. 126, 103 Am. St. 504, 1 Ann. Cas. 19; Staloch v. Holm, 100 Minn. 276, 111 N. W. 264, 9 L.R.A. (N.S.) 712; McGray v. Cobb, 130 Minn. 434, 152 N. W. 262, 153 N. W. 736. But we do not understand that these cases commit this court to the rule that locality is immaterial. The authorities elsewhere quite uniformly agree that some consideration must be given to the question of locality, although there is a wide divergence in the views of different courts as to what the correct rule is. In Pelky v. Palmer, 109 Mich. 561, 67 N. W. 561, it was said that the character of the locality or neighborhood in which a physisian or surgeon practises has an important bearing upon the requisite degree of skill. In Small v. Howard, 128 Mass. 131, 35 Am. Rep. 363, the court states that a country surgeon is not bound to the exercise of that high degree of art and skill possessed by eminent surgeons living in large cities and making a specialty of the practice of surgery, but only to that reasonable degree of learning and skill ordinarily possessed by others learned in his profession. Some cases seem to state the law as in the refused instructions, that is, that the physician or surgeon is held only to that degree of skill and learning possessed by physicians and surgeons of the particular locality where he practises. Pike v. Honsinger, 155 N. Y. 201, 49 N. E. 760, 63 Am. St. 655; Gates v. Fleischer, 67 Wis. 504, 30 N. W. 674. Other cases require the exercise of that degree of learning and skill which physicians and surgeons practising in *similar* localities or communities ordinarily possess. Whitesell v. Hill, 101 Iowa, 629, 70 N. W. 750, 37 L.R.A. 830; Small v. Howard, supra; Gramm v. Boener, 56 Ind. 497; Burk v. Foster, 24 Ky. Law Rep. 791, 69 S. W. 1096, 59 L.R.A. 277; McCracken v. Smathers, 122 N. C. 799, 29 S. E. 354. See note to Whitesell v. Hill, 37 L.R.A. 830; note to Gillette v. Tucker, 93 Am. St. 657. We think it is plainly correct that the locality in which the physician or surgeon practises must be considered in determining whether he has the requisite skill and learning, but we do not think that he is bound to possess and exercise only that degree of skill and learning possessed by other practitioners in the same locality, if by that is meant the same village or city. If the same general locality is meant, as, for

instance, the northwest, or the state, no fault could be found with such a rule. But in these days the physician or surgeon in a village like Cloquet is not hampered by lack of opportunity for advancement. Frequent meetings of medical societies, articles in the medical journals, books by acknowledged authorities, and extensive experience in hospital work, put the country doctor on more equal terms with his city brother. He would probably resent an imputation that he possessed less skill than the average physician or surgeon in the large cities, and we are unwilling to hold that he is to be judged only by the qualifications that others in the same village or similar villages possess. The instructions requested provided too narrow a standard, and the court was justified in refusing them, and giving instead the instruction that among the circumstances to be considered was the location of the physician in Cloquet, rather than in Duluth, St. Paul or some other place.

7. The claim of misconduct of counsel is based upon the action of counsel for plaintiff on the examination of prospective jurors in calling defendant to the stand and asking this question: "And is it true what counsel has just testified to, namely, that a certain company is interested in the defense of this case?" Defendant objected, the objection was overruled, and the ruling is assigned as error. We are unable to see any chance that defendant was prejudiced by the ruling, as the fact that defendant was insured was admitted. But we wish to express our emphatic disapproval of the conduct of plaintiff's counsel in calling the witness and asking this question after counsel for defendant had admitted the fact. An answer to the question could add nothing, and could serve no legitimate purpose.

Order affirmed.