[Civ. No. 6519. Second Appellate District, Division Two.—February 11, 1931.]

LAWRENCE W. SMITH, Appellant, v. GOLDEN STATE HOSPITAL (a Corporation) et al., Respondents.

V. P. Lucas and H. G. Bodkin for Appellant.

Kidd, Schell & Delamer, George L. Greer and Jennings & Belcher for Respondents.

CRAIG, J.—Having received personal injuries resulting in disability during the course of his employment, appellant instituted proper proceedings and was allowed compensation and medical treatment under the provisions of the Work-' men's Compensation and Safety Act (Stats. 1917, p. 831). Thereafter he filed an action against his employers and the hospital and physicians to whom he had been referred for medical and surgical treatment by the employers, praying damages for alleged permanent injuries subsequently incurred as a result of malpractice. Pending trial of the civil action, appellant was allowed additional compensation in consequence of the permanent injuries, upon further hearing before the Industrial Accident Commission. When said action was called for trial demurrers to the complaint and objections to the introduction of evidence were interposed, upon the ground that a cause of action was not stated. The defendants' objections were sustained, and the demurrers were sustained without leave to amend the complaint. The only parties defendant upon this appeal by the plaintiff are the hospital and the physicians, and the sole question presented is as to the right of the employee to maintain an action against them for malpractice after allowance of compensatory relief from the employers.

This question has not to our knowledge been determined in California, and the cases in other jurisdictions wherein it has been given especial consideration are conspicuously few. Those from which the parties to the instant appeal seek to deduce their respective theories of the rule are admittedly not precisely in point. Nor are we convinced that a failure

of either party to reconcile rulings in such instances with the pending cause is due wholly or even approximately, as is argued, to differences in the various legislative provisions. A true comprehension of the purposes and intentions of such legislation precludes a judicial expansion of its terms to embrace more than allowances properly chargeable to the business, for defraying expenses necessitated only by injuries arising in the course of and incident to the employment, and from the relationship of employer and employee. A brief review of the cited cases readily reveals their distinction from existing conditions and principles of law presented by the controversy before us. *Fields* v. *Mankato Elec. Traction Co.,* 116 Minn. 218 [133 N. W. 577], and *Goss* v. *Goss,* 102 Minn. 346 [113 N. W. 690], quoted therein, were actions for damages alleged to have proximately resulted from negligent conduct of the defendants and subsequent inattention of the latters' medical agents. In each case the rule obtaining in Minnesota was stated as follows: ''Where one person is injured by the wrong or negligence of another, and he himself is not negligent in the selection of a medical attendant, the wrongdoer is liable for all the proximate results of his own act, although the consequences of the injury would have been less serious than they proved to be if the attendant had exercised proper professional skill and care.'' In neither instance was a compensation act under consideration, nor was there room for discussion of the liability of a physician in the event of previous limited compensatory relief under the provisions of such an act. Three decisions from Kansas and Wisconsin are urged by respondents as analogous. (*Hooyman* v. *Reeve,* 168 Wis. 420 [170 N. W. 282] ; *Retelle* v. *Sullivan,* 191 Wis. 576 [50 A. L. R. 1106, 211 N. W. 756] ; *Bidnick* v. *Armour & Co.,* 113 Kan. 277 [214 Pac. 808].) In the Wisconsin cases the plaintiffs released their employers and the physicians from all claims, for a consideration, and the court remarked that ''to permit plaintiffs to recover in these actions would enable them to recover damages twice for the same injuries''. (*Retelle* v. *Sullivan, supra.*) In *Bidnick* v. *Armour & Co., supra,* it was expressly observed that no element of recovery could be attributed to improper treatment or malpractice. In *Lincoln Park C. & B. Co.* v. *Industrial Com.,* 317 Ill. 302 [148 N. E. 79, 80], and kindred cases cited, additional remunera-

tion in the nature of damages as for a tort, independent of the compensatory liability of the employer, as such, was not in issue. It there appeared that the applicant suffered burns from an X-ray examination after allowance and acceptance of an award, for which he was entitled to additional compensation, although the burns "did not aggravate the original injury or cause the recurrence or increase of the disability directly caused by that injury". Respondents rely with confidence on the following language of the Supreme Court of Illinois, which we think in view of what remains for later consideration confirms the result at which we arrive in the instant case. It was said that "if there had been no injury there would have been no examination, and if there had been no examination there would have been no burn. The burn resulted in the examination which the law authorized defendant in error to require to be made to ascertain whether plaintiff in error was entitled to further compensation for the injury of February, 1921. In undergoing the examination plaintiff in error received the injury *for which he asks compensation.*" (Italics supplied.) But that decision expressly recognized the conceded fact "that the employer is not liable, under the Workmen's Compensation Act, for injury resulting from malpractice of a physician. They admit that it is a different question from the one here involved, but say there is some analogy between the two questions." It would seem unnecessary to do more here than say of numerous other authorities cited that while kindred questions presented therein prompted expressions capable of carrying interpretation, none of them held that an apportionment of wages or an allowance based upon a wage scale as compensation as maintenance and in payment of proper professional services, would create a bar to an independent action found upon a sufficient showing of malpractice. And as heretofore stated, we do not so construe the intent of the statute in this state. By section 21, article XX, of the Constitution it is provided, in part: "The legislature is hereby expressly vested with plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workmen's compensation, by appropriate legislation, and in that behalf to create and enforce a liability on the part of any and all persons to compensate any and all of their workmen for injury or dis-

ability, and their dependents for death incurred or sustained by the said workmen *in the course of their employment,* irrespective of the fault of either party.'' (Our italics.)

Applying this provision in *Pacific Coast Casualty Co.* v. *Pillsbury,* 171 Cal. 319 [153 Pac. 24, 26], our Supreme Court said:

'' . . . It follows that this section measures and limits the legislative power in that respect. . . . It is these injuries only the redress of which may be committed by the legislature to a state industrial accident board. Hence it follows necessarily that the legislature cannot give such board power to settle disputes and allow compensation from the employer to a person who has been or is an employee, for a personal injury which was not incurred by him 'in the course of' his employment, or which happened after the employment had ceased, and was not the natural and proximate result of the employment, or of some injury which did not occur in the course of his employment. It could not give such board power to allow compensation to McCay for the additional disability or expenses arising from the slipping of the broken bone, unless such slipping was the natural or proximate result of the original injury. . . .

''This would be true as well where the subsequent injury is occasioned by the negligence of the injured person, or of some third person, without accident, as where it is accidental, if the consequent injury occurs after the employment had ceased, and is neither the natural nor the proximate result of the injury received in the course of the employment.''

Without conceivable exception, it must occur that by the construction universally placed upon humane workmen's compensation legislation, employees are so restricted with respect to relief for proximate injuries that their right to other recourse in the event of subsequent injury by independent third parties over whose discretion and actions neither employer nor employee has control, should be and is unfettered. ''The lawmaking power has taken from him all his common-law rights and all of his previous statutory rights, and has given him new rights. He does not, and cannot, have a hand in writing the insurance. . . . Before the enactment of these statutes the injured employee could sue for any sum designated in his complaint. Now he can apply

for the statutory allowance which is secured by insurance.''
(*Zurich Gen. Acc. & L. Ins. Co.* v. *Stadelman,* (Cal.) 276 Pac.
407, 409, superseded by 208 Cal. 151 [280 Pac. 687].) That
independent professions by the fact of business contact
with the employer should be absolved of responsibility for
mistake, avoidable or unjustified neglect resulting in second-
ary affliction, seems obnoxious to the purpose and spirit of
such a statute. To so hold might induce industry to encour-
age quackery, and place a premium upon negligence, ineffi-
ciency and wanton disregard of the professional obligations
of medical departments of industry, toward the artisan.
Such is the view entertained by courts of last resort in other
jurisdictions where the subject has required specific atten-
tion. In *Ruth* v. *Witherspoon-Englar Co.,* 98 Kan. 179,
[L. R. A. 1916E, 1201, 157 Pac. 403], an allowance under the
Kansas form of procedure of compensation and damages
emanating from improper medical treatment was reversed
for the reasons herein stated, with the following comments:
'' . . . If it should be proved here, for instance, that the
whole effects of the plaintiff's injury would under proper
treatment have disappeared within a year, that would obvi-
ously be the limit of the period for which he could recover
compensation in this action. His judgment here could not
be increased by the fact that through the incompetent or
negligent handling of the case by physicians a disability
which would otherwise have been merely temporary was ren-
dered permanent. (*Della Rocca* v. *Stanley Jones & Co.*
[1914], W. C. & Ins. Rep. 33 [7 B. W. C. C. 101], annotated
in 6 N. C. C. A. 624.) Even if circumstances had been
shown sufficient to charge the defendant with responsibility
for the fault of the physicians, the rule would not be altered;
for liability under the compensation act cannot be made
to depend upon the degree of care exercised. A part of the
loss occasioned by an accidental injury to a workman is cast
upon the employer, not as reparation for wrongdoing, but on
the theory that it should be treated as a part of the ordinary
expense of operation. So much of an employee's incapacity
as is the direct result of unskillful medical treatment does
not arise 'out of and in the course of his employment',
within the meaning of that phrase as used in the statute.
(Laws 1911, chap. 218, sec. 1.) For that part of his in-
jury his remedy is against the persons answerable therefor

under the general law of negligence, whether or not his employer be of the number.''

*Viita* v. *Fleming*, 132 Minn. 128 [Ann. Cas. 1917E, 678, L. R. A. 1916D, 644, 155 N. W. 1077, 1078], is strikingly similar to the instant case. An injured employee was sent to a hospital by his employer for treatment by physicians with whom the employer had an arrangement for treatment of employees in such cases. It was alleged that unskilful, or negligent treatment and appliances administered resulted in permanent injury, which otherwise would not have occurred. The employer submitted to the court for approval a proposed settlement reciting that ''the employer shall be and hereby is released from all claims on account of said injury, under said act or otherwise''. In an action against the physicians for damages it was contended by them that the cause of action had been included in and was barred by the settlement of their principals with the employee. The opinion proceeds:

''The contention that the relation of physician and patient did not exist between defendant and plaintiff is based upon the facts hereinbefore stated as to the arrangement under which plaintiff was admitted to the hospital and treated by defendants. We see nothing in these facts to justify a decision that defendants did not owe plaintiff the duty to use ordinary care and skill in treating the injury. It is true that Johnson-Wentworth Company, under the terms of the compensation act, was required to provide medical and surgical treatment to the injured employee during the first ninety days of his disability and to an amount not exceeding $100. But we are unable to see how this changes the relationship between the injured employee and the physician or surgeon employed, or affects the duty of the latter to the former. It may be true in a sense that Drs. Fleming and Dolan were the agents of the employer for the purpose of minimizing the results of the injury and shortening the period of disability. Even if it be conceded that the employer might be liable for the negligence of the physicians on this theory of agency, this is no reason why the physicians are not liable directly to the patient. It is not material that plaintiff did not know the physicians, engage their services himself, or pay for their services in the ordinary way. Plaintiff, in fact, paid for medical and surgical treatment, and it surely can

make no difference that this was by monthly deductions from his wages. Indeed, it is the law that the fact that a physician and surgeon renders services gratuitously does not absolve him from the duty to use reasonable care, skill and diligence. . . .

"We need add little to what is said in the preceding paragraph in order to dispose of the argument that the settlement under the workmen's compensation act by which the employer was released from 'all claims on account of said injury' operated as a settlement and release of any claim the employee might have against the physicians for malpractice. The employer, as we have seen, was not liable to the employee for the negligence of the physicians. It was not required to compensate plaintiff for damages sustained by their malpractice, and the settlement did not purport to include any such element. This is not contrary to the well-known rule, existing before the compensation act, that where one is injured by the negligence of another, and uses due care in the selection of a physician or surgeon, the wrongdoer is liable for all proximate results of his own act, although the injury has been aggravated by improper treatment by the physician. It by no means follows that the one whose negligence causes the original injury is liable for the negligence of the physician employed to treat it, and it is clearly not true that the physician is not liable to the patient for such negligence. When it appears, as it clearly does here, that there is a liability on the part of the physician to the patient, it is a strain to hold that a settlement between the injured man and the wrongdoer for the injury by the accident, whether made under the compensation act or outside of it, includes the claim that the injured man has against his physician for a separate and subsequent injury."

To like effect is *Pawlak* v. *Hayes,* 162 Wis. 503 [L. R. A. 1917A, 392, 156. N. W. 464]. Further comment by us, in face of the obvious result, and in the absence of contrary authority, becomes unnecessary.

The judgment is reversed.

Works, P. J., and Thompson (Ira F.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 13, 1931, and a petition

by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 10, 1931.