# CHARLES P. McGOUGH v. McCARTHY IMPROVEMENT COMPANY AND ANOTHER.[1]

No. 32,040.

July 7, 1939.

[1]Reported in 287 N. W. 857.

2

*Orr, Stark & Kidder,* for relators.
*Lawrence Hazen,* for respondent.

JULIUS J. OLSON, JUSTICE.

*Certiorari* brings for review an order of the industrial commission refusing to grant the employer and its insurer any relief upon their

joint petition seeking such, the facts alleged and assumed to be true being as follows: McGough, the employe, was seriously injured by an accident arising out of and within the course of his employment on June 22, 1934. He was at once removed to a hospital by his employer, his injuries being such that he was wholly helpless. Compensation under the act was promptly assumed by petitioners, and pursuant thereto there has been paid a total sum, in the way of compensation, hospital and medical care and treatment, of something over $5,000. The employe's disability continues. But it is averred that his present disability is not due to the original accident and would have been cured long since were it not for the malpractice of the physicians employed to treat him.

About June 17, 1936, the employe commenced an action for malpractice against these physicians and on May 4, 1937, settled the case for $1,500 at an expense of $250 for attorney's fees and other items. Petitioners claim credit upon the compensation otherwise payable to the employe of the net sum, $1,250, so collected. They gave notice of discontinuance of compensation and asked (1) for an order of the commission determining that the employer and insurer are entitled to credit on compensation due from and after April 21, 1938, in the mentioned sum; (2) that if such credit be denied a finding be made that the employer and insurer were not responsible for the disability resulting from the malpractice, and a determination that the present disability of the employe was the result of the malpractice and not due to the original injury; and (3) for an order authorizing and approving the final discontinuance of compensation.

The employe demurred to the petition as failing to state facts sufficient to warrant the granting of any relief thereunder. The commission sustained that view.

While a demurrer is neither authorized nor recognized by the compensation act, we have concluded, in view of the special circumstances here appearing (as did the commission), to accept the claims made in the petition as being established. We may therefore proceed to discussion of the legal problems presented.

4

Relators' claim is "that the true rule of law should be and is that the employer is liable under the [compensation] act for the results of the malpractice but is subrogated to the employe's claim against the physicians and entitled to payment or credit of the net proceeds of the recovery up to the amount of compensation paid or payable." Respondent concurs to the extent "that the results of malpractice flow directly and proximately from the original injury and so are compensable, and that malpractice is not an independent intervening cause."

■ As Sarber v. Aetna L. Ins. Co. (9 Cir.) 23 F. (2d) 434, 435, and the cases there cited, are relied upon by counsel for both sides of the controversy, we quote from that opinion as follows:

"Under the great weight of authority the employer is liable for all legitimate consequences following an accident, including unskillfulness or error of judgment of the physician furnished as required, and the employee is entitled to recover under the schedule of compensation for the extent of his disability, based on the ultimate result of the accident, regardless of the fact that the disability has been aggravated and increased by the intervening negligence or carelessness of the employer's selected physician." (Citing numerous cases.)

■ Adopting the rule quoted as a correct statement of applicable law, our next concern is whether the employer is "subrogated to the employe's claim against the physicians and entitled to payment or credit of the net proceeds of the recovery up to the amount of compensation paid or payable" as relators contend. They rely, as they must, upon 1 Mason Minn. St. 1927, § 4291(2), the material portions of which read:

*"Where an injury* * * * for which compensation is payable under part 2 of this act *is caused under circumstances also creating a legal liability for damages on the part of any party other than the employer, such party also being subject to the provisions of part 2 of this act* but where the provisions of subdivision 1 of this section do not apply or where said party or parties other than the em-

ployer are not subject to the provisions of part 2 of this act legal proceedings may be taken by the employee * * * against such other party or parties to recover damages, notwithstanding the payment by the employer or his liability to pay compensation hereunder, but in such case if the action against such other party or parties is brought by the injured employee, * * * and a judgment is obtained and paid or settlement is made with such other party either with or without suit, the employer shall be entitled to deduct from the compensation payable by him, the amount actually received by such employee * * * after deducting costs, reasonable attorney's fees and reasonable expenses incurred by such employee * * * in making such collection or enforcing such liability." (Italics supplied.)

The rights and obligations created by the compensation act are contractual. The rights granted and the obligations imposed necessarily rest upon the statute and are limited as granted or imposed by it. Tierney v. Tierney & Co. 176 Minn. 464, 223 N. W. 773. Hence it follows that the employer's liability has for its foundation the existence of employer-employe relation. The question is not whether "the cause of the accident is referable to a tortious or a blameless act, or whether if tortious the employer or some third person is blameworthy, or even that the employee is at fault if not wilfully so." State ex rel. Chambers v. District Court, 139 Minn. 205, 207, 166 N. W. 185, 186, 3 A. L. R. 1347. "A basic thought underlying the compensation act is that the business or industry shall in the first instance pay for accidental injuries as a business expense or a part of the cost of production." (*Id.* p. 209.) It is therefore manifest that when an employe enters upon the performance of his work and is exposed to the dangers and risks of injury, together with the attendant risk of malpractice in necessary medical care, he is protected under the act if injury arising out of and in the course of his employment happens to befall him. This is by virtue of his employment and the relationship obligation created by the act. Thus, when an injury is received during the course of and within the scope of his employment, medical care being needed,

6

the risk of improper treatment is a natural incident of the employment and directly traceable to it.

■ The liability of the malpracticing physician on the other hand is predicated upon negligence, a tort. His responsibility is based solely on personal fault. It is not founded upon the basis of the employer's relationship liability. The injured workman suing the malpracticing physician must recover from him upon the basis of negligence and proof thereof. When that burden has been met he is entitled to receive all compensatory damages naturally and proximately flowing from the negligence of the physician. This is obviously something entirely different from what the compensation act grants. In Zimmer v. Casey, 296 Pa. 529, 535, 146 A. 130, 131, the court said:

"Compensation under the act does not include all the elements of damages,—for illustration, pain and suffering. Some states hold that the award includes all damages (see Ross v. Erickson Construction Co., 89 Wash. 634, 155 Pac. 153 [L. R. A. 1916F, 319]), but most other states hold that it does not. This compensation then is not accepted as a substitute for all damages incurred. Ordinarily, only one action can be maintained for a single wrong at common law, and the right to recover for losses cannot be divided and made the subject of separate suits (Fields v. P. R. R. Co. 273 Pa. 282, 117 A. 59) but, while we decided in Betcher v. McChesney, 255 Pa. 394, 100 A. 124, that damages entailed but one compensation for the same injury, and but one action therefor, the Workmen's Compensation Act recognized the right in the injured person of a common law action against a person who himself did the injury and who was not a party to the particular agreement under which it was paid."

And (296 Pa. 538-539, 146 A. 133) "so the presumption must be that the law as to third persons in every respect stands as it was before the act." As between the employer and his employe, the act provides the measure for determining the rights and obligations of each party, but "the law does not attempt in any way to abridge the remedies which an employee of one person may have at law

against a third person for a tort which such third person commits against him." Smale v. Wrought Washer Mfg. Co. 160 Wis. 331, 334, 151 N. W. 803, 804.

A careful reading of the quoted statute leads to the view that it contemplates injury *originating* under circumstances which render a third party and the employer liable. "Hence, if no common connection, relation or interest between the third party and the employer is established, the employee may recover full damages from the third party, and it is immaterial that the employee has been awarded compensation from his employer." 15 Minn. L. Rev. 258, citing Gile v. Yellow Cab Corp. 177 Minn. 579, 225 N. W. 911. (The case supports the quoted text.) Here, as in the Gile case, it is perfectly clear that relators' claim for subrogation is not tenable under 1 Mason Minn. St. 1927, § 4291(1). (The historic background in respect of § 4291(1) is well stated in the recent case of Tevoght v. Polson, 205 Minn. 252, 285 N. W. 893. It came into our law in 1923. It does not purport to be, nor is it, a limitation upon the older act embraced in subd. 2.) Respondent's injuries at the hands of the negligent physicians, while having as their origin the accident suffered in the employment, are not of contractual origin but are due to tortious conduct. No other section of the statute has been cited giving the employer any such right of subrogation. It does not lie within our field to alter the law in this respect. The remedy lies with the legislature. It would be a forced construction were we to say that respondent's "injury for which compensation is payable" was "caused" by the malpractice "under circumstances also creating a legal liability" upon the malpracticing doctors when the occupational injury took place. In this respect our act differs from acts enacted in other jurisdictions. The Michigan act (see Overbeek v. Nex, 261 Mich. 156, 158, 246 N. W. 196, 197) provides:

" 'Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee may at his option proceed either at law against that person to recover damages, or against the employer for com-

pensation under this act, but not against both, and if compensation be paid under this act the employer may enforce for his benefit or for that of the insurance company carrying such risk, or the commissioner of insurance, as the case may be, the liability of such other person.' "

The same holds true also as to the Massachusetts law (see Jordan v. Orcutt, 279 Mass. 413, 181 N. E. 661) and that of North Dakota (see Polucha v. Landes, 60 N. D. 159, 171, 233 N. W. 264, 269). Obviously the right of subrogation under the various acts is referable to local law, and, as we have seen, our law does not provide, directly or by implication, for such right under the circumstances we have here.

Much is said in brief of counsel about "double recovery" if we sustain the decision reached by the commission. The claimed "logic" of the position taken in several of the cases cited is not convincing, certainly not compelling, for reasons already stated. Sustaining our views are Froid v. Knowles, 95 Col. 223, 36 P. (2d) 156, and Smith v. Golden State Hospital, 111 Cal. App. 667, 296 P. 127. The Colorado court in the Froid case said (95 Col. 226, 36 P. [2d] 158) :

"It will aid our study, we think, if we shall keep in mind that the liability of a tort-feasor is predicated on fault, that of an employer under the compensation act, on relationship. What plaintiff received from or through his employer resulted from relation; what he seeks from defendant is based on the latter's alleged fault."

That too was a malpractice case. The court after reviewing many cases came to this conclusion [95 Col. 233, 36 P. (2d) 161]:

"Our examination of the authorities has been painstaking, and while some courts hold otherwise, we are disposed to the view that, no less than in other circumstances, to deny remedy to the victim of malpractice simply because he has received compensative relief under the statute, is fraught with potential ill-being. * * * Legislative abrogation of the remedy invoked by plaintiff does not appear. * * * To allow orthodox determination is only just to plaintiff and is not unfair to defendant."

■ The case of Viita v. Fleming, 132 Minn. 128, 155 N. W. 1077, L. R. A. 1916D, 644, Ann. Cas. 1917E, 678, is relied upon by relators upon the theory, so they claim, that it was there held that an employer under the act "is *not* liable for the results of any malpractice or negligence on the part of a physician it employs to treat its employes" and by reason thereof "the employer is not subrogated to any claim of the employe for malpractice." While it is true that the language used by the court in the cited case might well justify the quoted statement, it is important to note that the court there was asked to decide whether an employe who had received compensation for an accidental injury could maintain a malpractice action against the attending physician. The court held that he could. To that extent there is no conflict with the result reached here. If, let us assume here, respondent had settled with his employer under the provisions of the compensation act, could the doctors in the malpractice suit successfully defend upon the basis of nonliability because of the settlement? We think they could not. The Viita case establishes that. Despite what was said in that case, we think responsibility for malpractice rests on the employer and compensation can be recovered, not because of any conception of tortious liability on the part of the employer but because it is an incident to the relationship and as such a part of the liability for which the act contemplates an award.

We have not overlooked Smith v. Mann, 184 Minn. 485, 239 N. W. 223. The meat of that decision is embraced in the court's first syllabus paragraph, which reads:

"One who accepts *satisfaction for a wrong done,* from whatever source, and releases his cause of action, cannot recover thereafter from anyone for the same injury or any part of it." (Italics supplied.)

Here respondent has accepted "satisfaction for a wrong done" on the part of those who did him "wrong." He has not received "satisfaction" from his employer, for as to him the liability is a contractual one not founded upon fault or "wrong done." To illustrate: Let us suppose respondent carried accident insurance paid for by

himself. He was hurt during the course of his employment and, as here, received faulty treatment on the part of his physicians. In that event could either the employer or the physicians escape liability by reason of the protection afforded by the insurance? Clearly not. And this is so for the simple reason that neither the employer nor the malpracticing physicians were parties to the insurance contract. And while the argument may fairly be made that in the supposed case the employe carried and paid for his own risk whereas here the risk is included in the coverage secured and paid by the employer, yet here, as a matter of fact, the industry in which the employer is engaged first pays this burden but must, to exist, later pass it on to the general public in paying the price, *i. e.,* cost of production of which this is a part, plus profit, for the things made by the joint enterprise of capital and labor. In either event someone must, and does, pay the premium.

There may arise cases where the injured workman will receive more than simple compensation under circumstances similar to these here appearing. But we can see no escape from that result under our act except by means of amendatory legislation. And while on this subject is it not true that (261 Mich. 159, 246 N. W. 197):

"It seems unfair to have defendant benefit by the provisions of the act, to plaintiff's disadvantage. The amount prescribed by the workmen's compensation act [Comp. Laws 1929, § 8407, *et seq.*] is limited. It is an average or compromise designed to permit compensation in all cases of industrial accidents arising out of and in the course of employment. It only provides for payment for a period limited by the statute, although the injuries may be permanent and continue for many years after compensation has ceased. Except to the extent that the cost of the insurance carried by the employer under the act is a burden upon industry, and that the public, as a whole, indirectly pays such cost through higher prices, the third party, who by his tortious act has caused the injury, had paid nothing towards that insurance. There is a contractual re-

lationship between the employer and the employee under the act, while the third party has committed a tort against the employee."

■ Certainly we should not so stretch judicial interpretation as to defeat the present respondent from retaining the meager benefits derived from the malpracticing doctors selected for him by his employer. That his recovery from the doctors belongs to him, and to him alone, was established by the commission in Ergen v. Palmer, 7 Minn. W. C. D. 62. Our present Chief Justice, then a member thereof, there said:

"It is quite clear that the legislature did not intend that the employer have the right to deduct for damages that might be recovered in a malpractice action brought against attending physician, even though the action itself arose out of acts of the attending physician in treating the employe for injuries sustained in the accident for which compensation was awarded."

That opinion was written in 1931. Since then many legislative sessions have been held. No change has been made in this part of our compensation law. So we may well infer that the interpretation there made has met with legislative approval.

The writ is discharged and order affirmed.

MR. JUSTICE STONE took no part.

MR. JUSTICE HILTON, being incapacitated by illness, took no part.

UPON APPLICATION FOR REARGUMENT.

On October 20, 1939, the following opinion was filed:

JULIUS J. OLSON, JUSTICE.

Since this cause was originally heard and determined relators' petition for reargument has brought about a reconsideration of the entire case and active participation therein by all the members of the court. We have been greatly benefited by the searching dissent written by Mr. Justice Stone. Our attention has been directed most forcefully thereby to whatever there was of error or weakness in the original opinion. The value of participation by all the mem-

bers of the court in every doubtful case is apparent here. That this case is of the doubtful variety is equally clear.

Numerous cases have reached this court under the compensation act and more particularly under part 2 thereof. Perhaps there are inconsistencies amongst them, but we think certain fundamental principles have been established as to which there is not now room for disagreement. If the employe's "injury or death is caused * * * by accident arising out of and in the course of his employment," he is, as a matter of law, entitled to the benefits and advantages provided by the act. The employer and his insurer must meet these. This is so because the moment the relationship of employer-employe comes into being there also "arises a statutory contract relation between them." The employe's rights under the act may not be defeated under the fellow servant rule, assumption of risk, or contributory negligence. Negligence does not arise in a compensation case unless the injury is caused by the employe's "wilful negligence." If the employe's injuries do not prove fatal he gets the statutory compensation and other benefits. But in the event he dies from the effects thereof, "his dependents are given a new, independent remedy, not depending on negligence or tort of the employer."

The employer is "relieved from liability for damages to the employe in an ordinary negligence case wherein he might otherwise be liable for damages to a much greater extent than under the compensation law. His liability in death cases, under the compensation act, in given situations, as where the dependent [widow] dies or marries, may also be substantially less than in actions for wrongful death. The employe is given a simpler and less expensive remedy, and a remedy not based on negligence of the employer." Lewis v. Connolly Contracting Co. 196 Minn. 108, 112, 264 N. W. 581.

Our difference of opinion arises by reason of relators' claim (adopted by Mr. Justice Stone) that an analogy exists between negligence and workmen's compensation cases insofar as "all damages are included in the one cause of action against the first

wrongdoer. In other words, the cause of action remains a unit, but includes, as a separate and additional element of damages, the harm arising from the malpractice."

1 Mason Minn. St. 1927, § 4326(a), reads:

"The word *'compensation' has been used* both in parts 1 and 2 of this act *to indicate the money benefits to be paid on account of injury or death. Strictly speaking, the benefit which an employe may receive by action at law* under part 1 of this act *is damages,* and this is indicated in section 1. To avoid confusion, the word 'compensation' has been used in both parts of the act, but *it should be understood that under part 1 the compensation by way of damages is determined by an action at law."* (Italics supplied.)

And § 4326(h) reads:

"The word *'accident'* as used in the phrases *'personal injuries due to accident'* or *'injuries or death caused by accident'* in this act, *shall,* unless a different meaning is clearly indicated by the context, *be construed to mean an unexpected or unforeseen event, happening suddenly and violently,* with or without human fault, *and producing at the time injury to the physical structure of the body."* (Italics supplied.)

From the first quoted portion of § 4326 it is apparent that the legislature clearly saw and recognized the distinction between the words "compensation" and "damages." Under part 1, "compensation" as there used means "damages" to be "determined by an action at law." Under part 2, "compensation" relates to the "money benefits" to be paid in the usual course thereunder. There the word has its own meaning.

In view of these statutory definitions, how can it be said that a physician's malpractice has anything to do with the *original injury* ("happening suddenly and violently * * * and producing at the time injury to" the employe's body) insofar as his liability is concerned to the injured workman whom he treats? The employe may be brought great distances and be hospitalized at various times and places far removed from the place of accident. The mal-

practice may happen months, perhaps years, after the accident causing the original injury. How can we say that the injured man's accidental hurt was here caused "under circumstances also creating a legal liability for damages" by the malpracticing physician? Obviously the physician is not liable for the *original* injury. While his services are called into play because thereof, his liability arises solely because of his own fault, later occurring, and has for its basis, not contract, but tort.

It is true, as claimed by relators, that the Gile case, including as well the Colorado and California cases, all cited in the opinion, did not involve the question of subrogation. In the Gile case, 177 Minn. 579, 225 N. W. 911, the meat of the decision is stated in the syllabus by the court:

"* * * an action at common law can be maintained by plaintiff against defendant to recover damages for personal injuries sustained, due to defendant's negligence, even though plaintiff is recovering compensation from his employer under the workmen's compensation act."

Liability was there imposed under subd. 2 of § 4291, subd. 1 not being applicable to the facts pleaded.

The Colorado and California cases hold definitely that the same theory applies to the malpracticing physician. If this is the correct view, then obviously McGough's action was not "a unit." If it was, then the malpracticing doctors would have to be exonerated under the rule stated in Smith v. Mann, 184 Minn. 485, 239 N. W. 223, and the many other cases therein cited and relied on.

Mindful, as we ever must be, "that the compensation act should receive a broad and liberal construction in the interest of workmen" (Nyberg v. Little Falls Black Granite Co. 192 Minn. 404, 405, 256 N. W. 732), we should studiously avoid a narrow or forced construction of the third party statute.

The petition for reargument is denied.

LORING, JUSTICE (concurring).

I concur in the result on the authority of Viita v. Fleming, 132 Minn. 128, 155 N. W. 1077, L. R. A. 1916D, 644, Ann. Cas. 1917E,

678, and think the original opinion should be modified in harmony with that decision.

STONE, JUSTICE (dissenting).

I agree that the compensation assured to an injured employe includes, as to result and so far as the statutory limit allows, damages resulting from the malpractice of the physician or surgeon selected by the employer.

The common-law background of the statute is the long established rule that where a tort is aggravated in result by the malpractice of a physician, in whose selection the injured party was guilty of no negligence, all damages are included in the one cause of action against the first wrongdoer. In other words, the cause of action remains a unit, but includes, as a separate and additional element of damages, the harm arising from the malpractice.

Obviously that idea has been carried over into the compensation statute. 1 Mason Minn. St. 1927, § 4291(2). That section has two subdivisions, covering two explicitly distinguished classes of cases. But the subject matter of both is single. It is "an injury or death for which compensation is payable." So, by deciding that the employer is liable for the malpractice of the physician treating his employe, we do not divide the latter's claim for compensation. We are not making two claims where otherwise there would be but one. We are but holding that the *original and unitary* claim is increased as to amount by result of the malpractice.

Subd. 1 applies only where the employer and the third party wrongdoer are "engaged in the due course of business, (a) in furtherance of a common enterprise, or (b) the accomplishment of the same or related purposes in operation on the premises where the injury was received at the time thereof, and not otherwise." In such cases the employe may elect to proceed against either the employer or the third party. He cannot proceed against both.

Going to subd. 2, we find that it covers all cases where the "injury or death for which compensation is payable under part 2 of this act is caused under circumstances also creating a legal liability for damages on the part of any party other than the employer"

except those covered by subd. 1. It is given express application "where the provisions of subdivision 1 of this section do not apply." Employe or dependents may proceed against the third party and recover damages "notwithstanding the payment by the employer or his liability to pay compensation." But the employer is emphatically given the right of subrogation to the amount of compensation paid or payable by him, except that it is limited to the "amount actually received by such employee or dependents after deducting costs, reasonable attorney's fees and reasonable expenses incurred * * * in * * * enforcing such liability." In such action by employe against third party, the employer is expressly given the right to intervene to insure its diligent prosecution.

The essential premise of this decision is that the employer is liable upon the *one claim* of the employe for compensation, which includes damages flowing from the malpractice of the physician. If that is right, and I think it is, how can we say, in view of the explicit provision of subd. 2, affirmatively granting the employer the right to subrogation, that he shall notwithstanding be denied that right?

Suppose this case: An employe protected by the act is so slightly injured as not to be disabled. But negligent treatment by his physician so aggravates the injury as to make the result fatal. There is but one claim for compensation. Its amount is fixed by the limit of *compensation* for death, with the right of the dependents to recover as much as possible from the physician for wrongful death. That recovery might exceed the compensation. How, I beg to inquire, may we properly deny, under the plain language of subd. 2, the employer's right of subrogation?

The two subdivisions of § 4291 cover *all* cases where an employer is held for compensation and concurrently a third party is liable for tort. This decision makes the statute inapplicable if the tortfeasor perchance is a negligent physician or surgeon. That important exception is not in the statute. We are adding it by construction. It is that phase of decision that compels my disagreement.

It advances argument not at all to invoke and quote the *general* distinction between compensation and damages, and the definition

of "accident" found in § 4326(h) of the compensation law. If otherwise they could have application to the instant problem, they are made irrelevant by the *special* allowance by § 4291 of subrogation to the employer where a third party is also liable for "damages." If such a case is within the statutory demand for compensation, it must be equally, as matter of plain English, within the statutory call for subrogation of the employer.

It is now conceded that Froid v. Knowles, 95 Col. 223, 36 P. (2d) 156; Smith v. Golden State Hospital, 111 Cal. App. 667, 296 P. 127; and Gile v. Yellow Cab Corp. 177 Minn. 579, 225 N. W. 911, have no application for the simple reason that in none of them was subrogation involved or even mentioned.

Two cases dealing directly with statutes allowing the employer to be subrogated to his employe's tort claim against a third party are Overbeek v. Nex, 261 Mich. 156, 246 N. W. 196; and Polucha v. Landes, 60 N. D. 159, 233 N. W. 264. In Overbeek v. Nex it was held that after accepting compensation from the employer the employe could not recover from a physician for malpractice, because by virtue of the subrogation statute that cause of action had been transferred to the employer.

The Michigan statute determinative of the case reads as follows [261 Mich. 158]:

"Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee may at his option proceed either at law against that person to recover damages, or against the employer for compensation under this act, but not against both, and if compensation be paid under this act the employer may enforce for his benefit or for that of the insurance company carrying such risk, or the commissioner of insurance, as the case may be, the liability of such other person." The court [261 Mich. 161] could see "no reason why a distinction should be made between the undisputed right of the employer to subrogate himself to the employee's rights against third parties responsible for the original injury and the right to subro-

gate himself when compensation has been paid for an aggravation caused by the malpractice of a third party."

Polucha v. Landes, 60 N. D. 159, 233 N. W. 264, was followed by the Overbeek case, 261 Mich. 156, 246 N. W. 196. (Under North Dakota law the right of subrogation is not in the employer but in the state compensation fund.) The employe who had suffered from a physician's malpractice was held to have no right against the physician because, by statutory subrogation, that cause of action had been transferred to the fund. That law provided, as to all third party cases, that if compensation is awarded, the fund [60 N. D. 171] "shall be subrogated to the rights of the injured employee or his dependents to recover against that person * * *." There follows a provision similar to ours reserving to the injured employe or his dependents any excess of the tort recovery over that paid by or demandable from the employer. Both Michigan and North Dakota statutes are in the same all-inclusive terms as ours. Without special mention of doctors, they apply to *all* cases where third parties are liable for "damages" and the employer is also liable for "compensation." It is at least significant that the Michigan and North Dakota courts did not feel at liberty to add to the statutes the proviso that the subrogation allowance should not apply where the third party happened to be a malpracticing physician.

In the majority opinion now filed there is attempt, in order to support the result, to bifurcate the employe's single claim, giving him one action for compensation against his employer and one for damages against the physician. That conclusion applies plainly enough to the tort claim against the doctor. It does not apply to the compensation claim against the employer. The latter remains single and includes the item of damages flowing from the malpractice. That is right, or a multitude of cases supporting that view are just plain blunders.

Mr. Justice Birdzell of North Dakota covered the whole proposition of unity by pointing out that it is a question of proximate causation, and that under the law the results of subsequent malpractice are regarded [60 N. D. 164] "as a consequence of the orig-

inal fault," without intervening act of a third party to break the chain of causation between the primary injury and the ultimate result. He added [60 N. D. 167]:

"No reason is apparent to us why a condition that in common law actions for negligence is said to result proximately from the original injury may not also be said to result from the original injury in compensation cases, especially since the statute specifically authorizing the compensation to be paid considers the results rather than the original injury as the basis for compensation. There is no reason why one rule of causation should be applied in negligence cases at the common law and another rule in compensation cases."

Only by such conclusion can we reasonably bring the harm of malpractice within the demand of the statute that, in order to be compensable, the injury must arise out of and in the course of the employment. Being so considered within the statute for purposes of compensation, how can it be put outside for purposes of subrogation? One is no more clearly allowed than the other—one no more a statutory right than the other.

One word more. We are all so fond of the protection afforded by the compensation law to employes that it is easy to ignore both extent and detail of the reciprocal protection afforded employers. In proportion as this decision denies an employer the right of subrogation against a third party we are depriving him of an affirmative protection expressly granted by statute. And we are by judicial grant giving the employe a double award which, except as to the excess of the tort recovery over the amount of compensation, the statute denies.