No. 30,540.

C. T. COOKE, *Appellee,* v. J. C. BUNTEN, *Appellant.*

(11 P. 2d 1016.)

Opinion filed June 4, 1932.

*J. B. McKay,* of El Dorado, *Ralph T. O'Neil, J. D. M. Hamilton* and *Barton E. Griffith,* all of Topeka, for the appellant.

No appearance was made for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This appeal presents a question of law touching the liability of a physician and surgeon for malpractice in the treatment of a workman whose injuries entitled him to compensation under the workman's compensation act.

Plaintiff's petition alleged that on June 14, 1929, he suffered an accident whereby he fractured the bones in his left elbow and the bones of his fourth finger and a finger joint of his left hand. He alleged that he employed the defendant, Dr. J. C. Bunten, to treat those injuries, and that defendant treated them so carelessly, negligently and unskillfully that in bandaging plaintiff's arm the circulation was stopped; that the bandages were negligently permitted to remain on the arm for three weeks; that this negligence caused plaintiff's elbow to become permanently stiff and disabled; that defendant negligently failed to discover that the knuckle joint of plaintiff's fourth finger on his left hand was broken and failed to set the bones thereof, whereby plaintiff has lost the use of that finger. Plaintiff also alleged that such negligence and want of skill on the part of defendant has rendered him permanently disabled from engaging in his vocation as a skilled workman to his damage in a substantial sum, for which he prayed judgment.

Defendant filed an answer containing a general denial, an admission that defendant was a licensed physician and surgeon, and admitted that on or about June 14, 1929, plaintiff sustained an injury and that defendant was employed in his professional capacity to attend the plaintiff, and that he did thereafter perform professional services and render treatment for plaintiff's injury.

As a further and *fourth* answer and defense to plaintiff's action defendant alleged that at the time of his injury plaintiff was employed as a workman by a firm of well drillers, Ramsey & Haines, and that he and his employers were operating under the workmen's compensation act and that plaintiff's injury arose out of and in the course of his employment; that plaintiff filed a claim for compensation; that compensation proceedings followed in which plaintiff, his employer and the insurance carrier participated, the compensation commissioner approving and consenting thereto; and that periodical payments aggregating $324 were made to plaintiff while those proceedings were pending, and at their conclusion a further award of $2,300 in a lump sum was paid to plaintiff, in settlement and

satisfaction of his injuries sustained in his employers' services. Defendant further alleged that if plaintiff suffered injuries and damage by ·reason of any negligence of defendant, which he specifically denied, such injuries and damage were the proximate result of the accident of June 14, 1929, which plaintiff sustained in his employers' service and for which he had been fully compensated, and for which he had executed full release and satisfaction, and that such release had been timely filed with the commission of labor and industry in conformity with the statute.

Plaintiff's motion to strike the foregoing fourth paragraph of this answer was overruled. He then filed a demurrer thereto, and it was sustained. From that ruling defendant appeals.

Counsel for defendant have marshaled for our examination a considerable number of decisions from other jurisdictions which hold that where a workman has sustained injury in his employer's service and that service is covered by the compensation act any aggravation of his injury occasioned by the negligence of the physician in giving treatment therefor is considered as part of the original injury and the award of compensation allowed or allowable under the act therefor is exclusive, and that no separate action against the physician for additional recovery as damages is maintainable.

To that effect is the instructive case of *Polucha v. Landes*, 60 N. D. 159 [1930], where most of the cases on this question are collated. In *McDonough v. National Hosp. Ass'n*, 134 Ore. 451, the workman claimed and received additional compensation because of the aggravation of his industrial injury through the alleged malpractice of the physician. In ruling against his independent action for malpractice the court said:

"We are not unmindful that there are cases in some jurisdictions holding that an aggravation due to the unskillful treatment of a physician is not compensable under the particular compensation act in force in such jurisdictions, and, not being compensable, that such aggravation is a new, separate and independent injury for which an action against the physician will lie. An examination of such acts will show that a marked difference exists between such acts and the provisions of our own act. It is clear from a reading of our own statute that an aggravation of the primary injury resulting from the mistake, negligence or malpractice of a physician in treating the original injury is compensable under the act, and that the act intends that there shall be but one satisfaction for the added injury in cases where the injured workman has received full compensation for the combined injury." (p. 462.)

In *Vatalaro v. Thomas*, 262 Mass. 383, where plaintiff, a workman injured in his master's service and who had received compensation

therefor, sought to maintain an action of tort against the surgeon who had negligently treated him and thereby greatly aggravated his injuries, it was held:

"(1) The defendant's lack of skill in performing the operation was an act of negligence which, it might reasonably have been anticipated, would follow as a natural and probable consequence of the original injury;

"(2) Acceptance by the plaintiff from his employer's insurer of compensation under the workmen's compensation act was acceptance of compensation for the injury which was the basis of this action;

"(3) Such acceptance of compensation barred recovery from the defendant." (p. 383.)

In *Pawlak v. Hayes*, 162 Wis. 503, it was held that an injured workman might elect whether he would claim compensation or sue the physician for malpractice whereby his industrial injury was aggravated, but he could not do both.

In *Booth & Flinn, Ltd., v. Cook*, 79 Okla. 280, and in *Brown v. Sinclair Refining Co.*, 86 Okla. 143, it was held that the compensation act furnished the exclusive redress for a workman covered by its provisions notwithstanding his industrial injury was aggravated by the physician's alleged malpractice.

On the other hand, in our own familiar case of *Ruth v. Witherspoon-Engler Co.*, 98 Kan. 179, 157 Pac. 403, it was held that under the compensation act an employer's liability to compensate a workman injured in his service could not be augmented because of the incompetent or negligent surgical treatment of the surgeon who treated the workman for his industrial injury. In the course of the opinion, the late Mr. Justice Mason, speaking for this court, said:

"So much of an employee's incapacity as is the direct result of unskillful medical treatment does not arise 'out of and in the course of his employment' within the meaning of that phrase as used in the statute. (Laws 1911, ch. 218, § 1.) For that part of his injury his remedy is against the persons answerable therefor under the general law of negligence, whether or not his employer be of the number." (p. 181.)

To the same effect was *Ellamar Mining Co. of Alaska v. Possus*, 247 Fed. 420; *Viita v. Flemming*, 132 Minn. 128, L. R. A. 1916D 644, 648, and note; also note in L. R. A. 1917D 172. (See, also, *Moeser v. Shunk*, 116 Kan. 247, 226 Pac. 784.)

In some of the decided cases in other jurisdictions the Ruth case is disapproved; elsewhere it is assumed that our Kansas statute may be different from the particular compensation act under discussion.

Be that as it may, there is no language in our compensation stat-

ute, nor in any which has come under our notice, which explicitly declares that the aggravation of an industrial injury caused by the negligence or want of skill on the part of a physician or surgeon who treats the injury is to be regarded as a part of the original injury and that the workman has no other redress for such negligence than the award provided by the compensation act. This court is disinclined to write such a doctrine into our statute, and we are not impressed with the reasoning of the courts which have done so, although we heartily acknowledge the assistance we frequently obtain from their instructive decisions in the solution of our judicial problems. Under the common law an employer who selected a skillful physician or surgeon to treat his injured or ailing servant discharged his full duty to his servant, and was not liable for the mistakes or negligent acts or omissions which such professional man might subsequently commit. (*A. T. & S. F. Rld. Co. v. Zeiler*, 54 Kan. 340, 38 Pac. 282.) And while the compensation act has radically changed and enlarged the master's duty to his servant, it has not specifically changed that particular rule. Cases can readily be imagined where the scheduled compensation for an industrial injury would be a grossly inadequate compensation for the consequences flowing from the negligent malpractice of a physician who treated the injury. Thus for the loss of a toe, 60 per cent of the workman's average weekly wages during 10 weeks; loss of a hand, 60 per cent for 150 weeks; loss of a leg, 60 per cent for 200 weeks; loss of an eye, 60 per cent for 110 weeks; and not another dime although the surgeon called on to treat the workman for such injuries should cruelly bungle the treatment, use no anesthetics, let the suffering workman wait while he played a round of golf! An industrial wound in the face would probably cause a workman no serious or lasting incapacity to work and earn wages, consequently the compensation award under the act for such an injury would be trivial; but if that facial injury were negligently treated by a careless doctor the result might render the workman's features hideous. Surely such negligence would constitute a tortious wrong for which the doctor ought to pay. To hold that the moderate, often nominal, awards of the compensation act would limit the workman's redress for such negligence would shock the public conscience. Our compensation act has been repeatedly amended and once entirely rewritten since the rule in *Ruth v. Witherspoon-Engler Co.* was announced, and the legislature has been content to let it stand. It is therefore reaffirmed.

The judgment is affirmed.