(779 P.2d 447)
No. 63,171

DAVID E. ROBERTS, *Appellee*, v. JOHN J. KRUPKA, NEUROLOGICAL SURGERY, P.A., ST. FRANCIS REGIONAL MEDICAL CENTER, INC., JOHN HUGHES, D. RACETTE, WANDA TATE, SHERRY LOYD, VEVA EDWARDS, PAIN ANESTHESIA AND CRITICAL CARE SERVICES, P.A., JUDY APPLEBY, KENT COOPER, and JOHN HERED, *Defendants*, v. HIZEY WELL SERVICE & SUPPLY and U.S.F.&G. INSURANCE COMPANY, *Movants to Intervene/Appellants*.

Opinion filed August 25, 1989.

*Frederick L. Haag*, of Foulston, Siefkin, Powers & Eberhardt, of Wichita, for the appellants.

*Kurt A. Harper*, of Sherwood, Hensley, Harper & Gregory, of Wichita, for the appellee.

*Steven L. Foulston*, of Wichita, for *amicus curiae* Kansas Workers' Compensation Fund.

Before RULON, P.J., LARSON and LEWIS, JJ.

LEWIS, J.: Hizey Well Service & Supply (employer) and U.S.F.&G. Insurance Company (insurer), appeal from the trial court's decision denying their motion to intervene in a malpractice action in which David E. Roberts was the plaintiff and John J. Krupka, a physician, and other health care providers were the defendants.

As we view this appeal, there is one substantive issue and one procedural issue with which this court must deal. The sole substantive issue is whether an employer and its insurer who have paid additional disability benefits and medical expenses under the express order of an administrative law judge (ALJ) in a workers' compensation case are entitled to intervene in the

malpractice action filed by an employee against his physician for the purpose of asserting subrogation rights to the proceeds of that lawsuit. A resolution of this particular question depends upon whether this case is controlled by a 1916 Kansas Supreme Court decision, *Ruth v. Witherspoon-Englar Co.*, 98 Kan. 179, 157 Pac. 403 (1916).

The facts which underlie this controversy are not in serious dispute. The result that is dictated, however, by the application of the doctrine set forth in *Ruth* is bizarre and catapults the court and the litigants into a kind of "Alice in Wonderland" world in which logic becomes illogic, fiction becomes fact, and success becomes potentially fatal to certain claims by the plaintiff which are the result of an injury sustained in the course of his employment and compensable under the Workers' Compensation Act (Act). In short, we believe the application of *Ruth* to the facts of this case will give us the type of result that causes laymen to scratch their heads and roll their eyes in bewilderment at what our legal system sometimes dictates. It calls to mind the Dickensian statement that "if the law supposes that, the law is a ass."

Roberts was employed by Hizey when he was injured on the job in November 1982. He filed a claim under the Act and appellants began to make regular disability and medical payments to and on behalf of Roberts. Subsequent to, but as a direct result of his job-related injury, Roberts sought treatment from Dr. John Krupka, a physician, who performed surgery on Roberts. Roberts alleges this surgery was not performed successfully or skillfully, and that it aggravated and prolonged his original disabilities. He thereupon sued Krupka and eleven other medical care providers for medical malpractice.

We pause to note that, because of the legal doctrines which we will deal with in this case, it was necessary for Roberts, in order to maximize his recovery, to file two legal proceedings and employ two sets of lawyers. On the one hand, Roberts had and still has his workers' compensation case in which he is represented by one set of lawyers and insists his ailments and disabilities were not caused by malpractice. On the other hand and simultaneously, he has his malpractice lawsuit in which he is represented by another set of lawyers in which he insists those same ailments and disabilities were, indeed, caused by malpractice of his physicians. The fact that Roberts was required to

retain two different law firms to maximize damages all directly traceable to one job-related injury while employed by appellant Hizey is one of those "through the looking glass" features of this case that will be discussed later in this opinion.

Even though Roberts had sued several physicians for malpractice, saying they were responsible by their negligent treatment for aggravating and prolonging his present disabilities, the ALJ in the workers' compensation action ordered appellant U.S.F.&G. to continue to make medical and disability payments to Roberts for those conditions which Roberts was by then claiming were caused by medical malpractice. This left appellants, particularly U.S.F.&G., in a difficult position with little choice but to obey the order of the ALJ and pay out benefits which may have been wrongfully ordered since that order was not appealable but was certainly enforceable. U.S.F.&G. has paid medical and disability benefits on behalf of Roberts, which have accumulated as of August 1988 to an amount in excess of $176,000, for a condition which originated with his on-the-job injury but was aggravated by his medical treatment.

In its brief, U.S.F.&G. argues it had entered into an agreement with Roberts that it would continue to make all disability and medical payments in consideration of the agreement on Roberts' behalf to repay all amounts received from U.S.F.&G. after January 30, 1985, from the proceeds of Roberts' malpractice action. The existence of this agreement and its binding effect is disputed by Roberts. Had the existence of the agreement been proven, we would be inclined to consider issues such as unjust enrichment and estoppel. However, we do not believe the existence of the alleged agreement was adequately proven, and, as a result, it forms no part of our final decision.

In August 1988, 38 months after Roberts filed the malpractice suit, appellants moved to intervene. Appellants also moved to implead the Workers' Compensation Fund (Fund) on the theory that the Fund would ultimately be responsible to reimburse appellant U.S.F.&G. for any compensation which it had wrongfully paid by reason of the ALJ's order should it be determined it had no subrogation rights against any recovery or settlement by Roberts in his malpractice action.

Shortly after the motions by appellants were filed, Roberts settled the malpractice action. The trial court, in a written opin-

ion, denied the motion of appellants to intervene on the basis of the doctrine set forth in *Ruth*, 98 Kan. 179, and on the grounds that the motion to intervene was not timely filed.

Appellants have timely appealed that decision to this court, and the Fund has filed an *amicus curiae* brief supporting the position taken by appellants. The Fund argues that appellants should have been permitted to intervene and should have had subrogation rights to and a lien against any recovery by Roberts in the malpractice action because U.S.F.&G. had paid medical and disability expenses necessitated by aggravation of the original job-related injury by malpractice of the physicians involved.

The first issue we wish to dispose of on this appeal is a procedural one. Counsel for Roberts argues quite strenuously that the trial court properly held the motion by appellants to intervene was not timely filed and that we should affirm the trial court on that issue, thereby disposing of the entire lawsuit and avoiding a confrontation with the *Ruth* doctrine. Upon examination of the record, it is our judgment that this case was decided not on the issue of whether the motion was timely filed but on the fact that, under the doctrine set forth in *Ruth*, appellants had no right to intervene.

Although appellants waited 38 months while a malpractice suit was being litigated before filing their motion to intervene, it is difficult to see where substantial prejudice was caused to Roberts by the failure of appellants to intervene at an earlier time. From Roberts' point of view, the main thrust of the lawsuit was whether his doctors were negligent in treating him and, if so, what damages he sustained as a result. The interest of U.S.F.&G. in the lawsuit had nothing to do with the nature and extent of Roberts' injuries nor with the issue of malpractice. The interest of U.S.F.&G. in the lawsuit was to attempt to subrogate against the proceeds of the settlement, and, under those circumstances, there was no reason for U.S.F.&G. to act any earlier than it did. The fact is that, unless and until it was determined that Roberts' disabilities were aggravated by negligent medical treatment and he was entitled to recover sums of money for such aggravation, U.S.F.&G. had no reason to even consider intervention. To have attempted to intervene earlier would have complicated the issues and needlessly increased the cost of litigation. We believe that, under the circumstances and facts of this case, the motion to

intervene, having been filed shortly before the lawsuit was settled, was timely filed and the trial court erred in concluding it was not. Accordingly, we reverse the decision of the trial court on this procedural issue.

The substantive issue on appeal is whether a physician's negligence that aggravates a patient's injury originally suffered on the job is a natural consequence of that injury, thereby making it compensable under the Act, or whether it is to be considered an independent, intervening cause which creates a new injury altogether divorced from the original job-related injury.

Our research, and that done by counsel, leads us to the conclusion that in 49 of our 50 states, such malpractice would be compensable and U.S.F.&G. would be entitled to intervene and would have a lien on the proceeds of the malpractice suit. See 82 Am. Jur. 2d, Workmen's Compensation, § 337, n.35. In one of our 50 states, Kansas, malpractice would not be considered compensable and U.S.F.&G. would not be permitted to intervene nor be entitled to subrogate against malpractice proceeds because of the decision in *Ruth*. No decision of a sister state that is consistent with *Ruth*, which has not been overruled, has been cited to us.

In *Ruth*, the claimant sustained an injury on the job and proceeded directly under the Act to recover his damages. The trial court found that claimant was disabled and awarded a judgment of $4,509.20. The employer, during the trial, took the position that at least a percentage of claimant's disabilities were caused by the negligence of the treating physician, and that an employer should not be responsible for the payment of compensation where disability is aggravated by the negligence of the treating physician. Our Supreme Court, in 1916, agreed with the employer and reversed the trial court, holding:

"The plaintiff was entitled to recover compensation based only upon such disability, total or partial, as resulted from the injury received in the course of his work, without the intervention of an independent agency. The matter is not confused by the need of determining what results might have been anticipated, or by any refined distinctions between proximate and remote causes, for whether and to what extent disability in such a case as the present has been increased by want of proper surgical care admits of ascertainment with reasonable definiteness and certainty. If it should be proved here, for instance, that the whole effects of the plaintiff's injury would under proper treatment have disappeared within a year, that would obviously be the limit of the period for which he could recover compensation in this action. His judgment here could not be increased by the fact

that through the incompetent or negligent handling of the case by physicians a disability which would otherwise have been merely temporary was rendered permanent. (*Della Rocca v. Stanley Jones & Co.*, [1914] W. C. & Ins. Rep. 33, annotated in 6 N. C. C. A. 624.) Even if circumstances had been shown sufficient to charge the defendant with responsibility for the fault of the physicians, the rule would not be altered, for liability under the compensation act can not be made to depend upon the degree of care exercised. A part of the loss occasioned by an accidental injury to a workman is cast upon the employer, not as reparation for wrongdoing, but on the theory that it should be treated as a part of the ordinary expense of operation. So much of an employee's incapacity as is the direct result of unskillful medical treatment does not arise 'out of and in the course of his employment' within the meaning of that phrase as used in the statute. [Citation omitted.] For that part of his injury his remedy is against the persons answerable therefor under the general law of negligence, whether or not his employer be of the number. It was doubtless desirable that the malpractice issue should have been distinctly presented in the pleadings, but in any event it was incumbent on the plaintiff to show what degree and duration of incapacity was the direct result of the original injury received in the course of his work, without the intervention of an independent cause." 98 Kan. at 181-82.

The Supreme Court then remanded *Ruth* back to the trial court to determine what extent of the disability resulted from the original injury, which would be compensable under the Act, and what extent resulted from the malpractice, which would not be compensable.

In the 73 years since *Ruth* was decided, our Supreme Court has had the issue confronted in *Ruth* before it on one other occasion and that was 57 years ago. In *Cooke v. Bunten*, 135 Kan. 558, 11 P.2d 1016 (1932), plaintiff was injured on the job and received the requisite workers' compensation benefits for that injury. As a result of the injury, plaintiff consulted with Dr. Bunten, who treated him unsuccessfully and whom plaintiff then sued for malpractice. Dr. Bunten sought to defend himself on the grounds that plaintiff had already recovered his damages through a workers' compensation action, that workers' compensation was the exclusive remedy in such a case, and that the malpractice action would not lie. The Supreme Court, citing *Ruth*, held the malpractice action was indeed appropriate and stated:

"Where a workman sustained injuries which were aggravated through the alleged negligence, carelessness and unskillfulness of the surgeon who treated them, the fact that the workman received an award of compensation for so much of his injuries as 'arose out of and in the course of his employment' was not a defense to an action by the workman against the surgeon for malpractice—following *Ruth v. Witherspoon-Englar Co.*, 98 Kan. 179, 157 Pac. 403." *Cooke*, 135 Kan. 558, Syl.

In analyzing *Cooke*, it is apparent that the court went out of its way to reaffirm *Ruth* when *Ruth* was really not relevant to the facts underlying *Cooke* and the decision could have been handed down without reference to *Ruth*. For the discussion of that issue and others relevant to it, we refer to Day, *Workers' Compensation: Is Medical Malpractice a Defense?*, 57 J.K.B.A. 8 (1988).

For whatever reason, the Supreme Court chose to reaffirm *Ruth* in *Cooke*, and that result has caused the confusion now before this court. The impact of those two decisions results in the decision that U.S.F.&G. is unable to intervene in the malpractice action or assert a lien against the malpractice action proceeds to recover amounts it has paid by order of the ALJ for a condition aggravated by medical malpractice. *Ruth* and *Cooke* have forced Roberts to employ two sets of attorneys and to claim in one case that his injuries are the result of malpractice while, at the same time, insisting in his other case that his disability is not the result of medical malpractice. Indeed, under the doctrine of *Ruth*, aggravation of a work-related injury by malpractice of a physician is not compensable under the Act. This results in the rather curious fact that, if Roberts were to be successful in his malpractice action and litigate that case to a jury or a court finding on his behalf, he would most certainly win the malpractice action, but he would, as a result, forfeit his chance of any further recovery in his workers' compensation action. The absurd result of this situation is that, in order to maximize his recovery, Roberts was almost forced to settle his malpractice lawsuit since he could not take the chance of a successful jury verdict and a binding finding that his disability was due to malpractice.

The case of *Bidnick v. Armour & Co.*, 113 Kan. 277, 214 Pac. 808 (1923), demonstrates just how confusing issues in this area can become. In *Bidnick*, claimant suffered a hernia from attempting to lift or overturn a barrel weighing 600 pounds while on the job for respondent. As a result of his hernia, claimant sought medical treatment and ultimately underwent a surgical procedure to repair that condition. As a result of the operation, claimant suffered a condition described as "milk-leg" in which his leg swelled considerably, due to a blood clot in one of the veins, causing him extensive disabilities. Claimant instituted a workers' compensation proceeding to recover compensation for

disabilities caused by the hernia, including the "milk-leg." Respondent, citing *Ruth*, argued that, if claimant suffered any on-the-job injury, it was strictly the hernia; that the "milk-leg" was caused entirely by the operation; and that the disability resulting from that condition was not compensable under the Act. The problem with the argument advanced by respondent was that respondent did not claim that the "milk-leg" was a result of medical malpractice. The Supreme Court, therefore, distinguished *Ruth* and held that, since the condition was not caused by malpractice, it was a compensable injury and *Ruth* did not apply, stating:

"Defendant contends that, if plaintiff sustained any injury in the course of his employment, it was the hernia, that the hernia was cured by the treatment and operation; that the 'milk-leg' was caused entirely by the operation for hernia; that, therefore, the 'milk-leg' was not an accident arising in the course of plaintiff's employment; and that plaintiff cannot recover. The defendant relies on the case of *Ruth v. Witherspoon-Englar Co.*, 98 Kan. 179, 157 Pac. 437. In that case, however, it was said:

" 'The evidence shows that the permanent character of his (plaintiff's) incapacity is actually the result, not of the injury received while working for the defendant, but of improper surgical treatment.' [Citation omitted.]

"In this case there is no claim that the 'milk-leg' was caused by improper surgical treatment or malpractice. The injury itself is the basis of complaint. While a reasonable conclusion from the evidence was that the lifting of the heavy barrel caused the hernia, that the hernia necessitated the operation, as a result of which one of the veins of plaintiff's leg was dammed or the flow of blood materially restricted, there was evidence 'that the milk-leg could be caused by an injury.' In either case the original injury was the contributing cause, if not the direct cause of plaintiff's condition. From the 600-pound barrel through the various stages to the 'milk-leg,' each step was the natural inducement of the next. The result was plaintiff's condition, from which he will be partially incapacitated, perhaps for life." 113 Kan. at 279.

When we add *Bidnick* to the mix of Kansas cases, we find we have a situation in which any additional disability caused by skillful medical treatment for the original injury becomes a compensable disability. On the other hand, any additional disability due to the same medical treatment for the original injury is not compensable if the medical treatment which aggravated the condition was negligent rather than skillful. Consequently, we see Roberts arguing that the doctrine announced in *Bidnick* applies in his compensation case while the doctrine announced in *Ruth* applies in his malpractice case. This argument is perfectly proper under the doctrine of *Ruth*. By utilizing *Bidnick*,

the same claimant with the same injury and disability can recover a second time for those injuries and is only required to have different sets of attorneys. The stumbling block for appellants' intervention is the *Ruth* case and the provisions of K.S.A. 1988 Supp. 44-504, which reads in pertinent part as follows:

"(a) *When the injury or death for which compensation is payable under the workers compensation act was caused under circumstances creating a legal liability against some person other than the employer or any person in the same employ to pay damages, the injured worker or the worker's dependents or personal representatives shall have the right to take compensation under the workers compensation act and pursue a remedy by proper action in a court of competent jurisdiction against such other person.* (Emphasis added.)

"(b) In the event of recovery from such other person by the injured worker or the dependents or personal representatives of a deceased worker by judgment, settlement or otherwise, the employer shall be subrogated to the extent of the compensation and medical aid provided by the employer to the date of such recovery and shall have a lien therefor against such recovery and the employer may intervene in any action to protect and enforce such lien. Whenever any judgment in any such action, settlement or recovery otherwise is recovered by the injured worker or the worker's dependents or personal representative prior to the completion of compensation or medical aid payments, the amount of such judgment, settlement or recovery otherwise actually paid and recovered which is in excess of the amount of compensation and medical aid paid to the date of recovery of such judgment, settlement or recovery otherwise shall be credited against future payments of the compensation or medical aid. Such action against the other party, if prosecuted by the worker, must be instituted within one year from the date of the injury and, *if prosecuted by the dependents or personal representatives of a deceased worker, must be instituted within 18 months from the date of such injury.*" (Emphasis added.)

From a reading of the statute, it is quite obvious, and the district court so held, that appellants can only intervene if the action is one based upon the negligence of a third party which gave rise to an injury for which compensation is payable. Under *Ruth*, compensation is not payable for a disability aggravated by malpractice. Under K.S.A. 44-504, intervention is not permitted unless the injury in the primary action is one for which compensation is payable. The malpractice action is not one based upon the negligence of a third party for an injury for which compensation is payable. Therefore, no intervention is permitted under the statute. The same is true of any lien rights claimed by appellant U.S.F.&G., even though it has paid Roberts considerable sums of money for disabilities which Roberts says were caused by malpractice, and for which Roberts has recovered damages in his malpractice action. Still, appellants have no lien

against that recovery because of the doctrine announced in *Ruth*. If we apply the 73 year old doctrine in *Ruth* to this case, it means the respondent and its insurance carrier, who have been under a workers' compensation court order to pay medical and compensation benefits under the Act for a disability either caused or aggravated by medical malpractice, will be unable to recover those amounts from the wrongful party who caused the injuries and disabilities, *i.e.* the physicians and other medical care providers whose malpractice resulted in the disability for which compensation payments have been made. This result will be one in which our Workers' Compensation Act is used to force payments to be made for non-compensable conditions, and is then next used to block recovery of those payments from the guilty party. How much better, logical, and just it would be to hold that *Ruth* simply no longer applies to a case of this nature and permit appellants to intervene and recover payments from the party who caused the damage.

We do not mean to imply that the application of *Ruth* leaves appellants without a remedy. If appellant U.S.F.&G. can demonstrate it made payments for a disability caused by a non-compensable act, it can recover those payments from the Fund. However, this seems entirely inappropriate since the Fund is created from contributions from employers all over Kansas. While such a recovery may largely reimburse U.S.F.&G. for its payments, that recovery will be at the expense of the Fund and of most employers in this state. That recovery will further increase the profit to the plaintiff, who will have recovered twice for the same disability, and who will still have an opportunity for even more recovery in his workers' compensation case.

In the typical tort case in Kansas, it is not considered a defense to the tortfeasor that the physician, whose services plaintiff sought as a result of the tortfeasor's negligence, was likewise negligent and guilty of malpractice in his treatment of plaintiff, thereby increasing the damages. Even in workers' compensation cases in Kansas we have taken the approach, and our Supreme Court has stated numerous times, that every consequence which flows from the injury, including a new and distinct injury, is compensable under the Act if it is a direct and natural result of the primary injury. See *Chinn v. Gay & Taylor, Inc.*, 219 Kan. 196, Syl. ¶ 1, 547 P.2d 751 (1976); *Bergemann v. North Central*

*Foundry, Inc.*, 215 Kan. 685, Syl. ¶ 1, 527 P.2d 1044 (1974); *Jackson v. Stevens Well Service*, 208 Kan. 637, Syl. ¶ 1, 493 P.2d 264 (1972). We believe that the only exception to this well-established rule in Kansas is where the aggravation of the original injury is caused by the malpractice of the physician whom claimant has consulted and retained to treat his on-the-job injuries; this exception is based upon the holding in *Ruth*.

To illustrate the state of the law in our sister jurisdictions, we quote from 1 Larson's Workmen's Compensation Law, § 13.21 (1989):

"It is now uniformly held that aggravation of the primary injury by medical or surgical treatment is compensable. Examples include exacerbation of the claimant's condition, or death, resulting from antibiotics, antitoxins, sedatives, painkillers, anesthesia, electrical treatments, or corrective or exploratory surgery.

"Fault on the part of the physician, such as faulty diagnosis, improper administration of anesthesia, or a slip of the surgeon's knife, even if it might amount to actionable tortiousness, does not break the chain of causation."

That statement by Larson is largely correct but should contain a disclaimer. The statement should properly read that "it is now uniformly held, everywhere but in the State of Kansas."

In 82 Am. Jur. 2d, Workmen's Compensation § 37, it is stated: "According to most authorities, unskilful or improper treatment, or malpractice, does not constitute an independent, intervening cause within the operation of the foregoing rules, but some hold to the contrary."

In the footnote in Am. Jur. 2d supporting the statement that some cases hold to the contrary of the general rule, *Ruth* is the only case cited as taking a position contrary to most authorities. In short, Kansas stands alone in its application of the rule laid down in *Ruth*.

The State of Minnesota went through a progression similar to that which we believe should take place in Kansas. In *McGough v. McCarthy Improvement Co.*, 206 Minn. 1, 287 N.W. 857 (1939), the Minnesota Supreme Court held that where an employee was awarded compensation for injuries arising out of the course of his employment and also recovered damages from a physician for malpractice, the employer and its insurer could not deduct the amount recovered for malpractice from the amount of compensation awarded. This case, while coming to the court on facts somewhat different than *Ruth*, had the same result as *Ruth* in that it permitted a double recovery by the plaintiff and denied

the employer or its insurance carrier the right of subrogation.

This same issue was presented to the Minnesota court in *Thibault v. Bostrom*, 270 Minn. 511, 134 N.W.2d 308 (1965). In *Thibault*, an employee had been injured while on the job; while the employee was on his way home from seeing a physician for that injury, he was in an automobile accident and suffered more injuries. The employee recovered compensation for both the original injury and the injury sustained in the automobile accident, which was paid by the employer. The employee then sued the third-party tortfeasor, and the employer sought to subrogate to the extent of its compensation payments. The employee argued that *McGough* stood for the rule that no subrogation was allowed. The Minnesota court, beginning to realize the illogic of *McGough*, stated:

"But, we are in effect told, since his right to recover compensation has been extended by judicial interpretation to apply to nonemployment events occurring after a compensable injury (in this case, after a lapse of over 8 years), the employee is entitled to collect the workmen's compensation benefits and then to sue the third-party tortfeasor for the same damage free of subrogation or reimbursement rights in the employer-insurer.

"If this is the law, the more tenuous claim attracts the more bountiful remedy.

"Before we are led to a result seemingly so unreasonable through unquestioning adherence to the language of the *McGough* case, a close examination of it seems needed." 270 Minn. at 513.

*Thibault*, examining *McGough*, managed to distinguish it factually, or as best it could, and permitted a subrogation recovery.

The Minnesota trilogy ended with the decision in *Williams v. Holm*, 288 Minn. 371, 181 N.W.2d 107 (1970), which is very similar to the case at bar. In *Williams*, the employer-insurer had paid additional benefits and medical expenses for an employee's injury which was caused by the malpractice of the physician in treating the original injury. The issue in that case was, as it is here, the right of the employer-insurer to intervene and subrogate to the malpractice recovery. The stumbling block in Minnesota was the *McGough* decision to the same extent as the *Ruth* decision is the stumbling block in the case before this court. The Minnesota Supreme Court, in deciding to end the duplicity and the distinguishing of cases on facts in order to get around absurd results dictated by *McGough*, stated:

"The Workmen's Compensation Act makes no distinction between the tort of malpractice and any other tort in allowing subrogation to a compensation carrier

who is required by law to pay benefits and medical expenses to and for an employee who has received an aggravation of an old injury or additional injury under the circumstances present in the instant case or those present in *Thibault*. Nor do we see any reason for distinguishing this case from *Thibault*.

"Consequently, we overrule the *McGough* case and join the majority, if not all, of the courts in the United States, in holding that there is a right of subrogation under statutes and fact situations similar to the applicable statute and facts in this case. To rule otherwise would be inequitable and would permit double recovery by the employee." 288 Minn. at 374.

It is important at this point to note that in Kansas, as in Minnesota, the Workers' Compensation Act itself makes no distinction between the tort of malpractice or any other tort insofar as intervention and subrogation is concerned. The statute reads rather broadly in permitting subrogation against any third party whose negligence has caused or aggravated the original work-related problem and who is sought to be held responsible for the damages caused. The distinction in Kansas is not statutory; it is court-made, it is 73 years old, and it no longer has any relevance. We believe that the time has come to bring the Kansas decisions "out of the looking glass" and back into the real world.

We have no express authority to overrule a decision of the Kansas Supreme Court, and emphasize that only that court may overrule its prior decisions. We believe in the doctrine of stare decisis and, by and large, that doctrine controls our decisions, governs our deliberations, and results in consistent applications of the law. However, the doctrine of stare decisis is not and cannot be an unbreakable chain to which we are bound forever. If it is that, the law cannot and will not grow or change, and cannot be modified to fit modern society.

If we desired, we could easily distinguish *Ruth* on the facts since an entirely different factual scenario was presented here than was in *Ruth*. It could be pointed out that in this case the appellants are simply trying to recover funds which were ordered paid by an ALJ's order, while in *Ruth*, the employer was seeking to establish that it was not responsible for malpractice-induced aggravations. These factual distinctions are made in many instances and many times are made simply to avoid an absurd result dictated by an ancient decision.

On due consideration, however, we choose not to rest our decision on some factual or technical distinction of facts between the cases. We are, on occasion, required to anticipate, and we do anticipate, what our Supreme Court might do or say if presented

with an incongruous result based on an aging precedent which had not been considered for 57 years. We do so in this case and anticipate that the Supreme Court, if presented with this case, would overrule *Ruth* and place Kansas back in the union insofar as malpractice subrogation under workers' compensation cases is concerned. We cannot imagine that the Kansas Supreme Court, upon hearing this appeal, would uphold the doctrine in *Ruth*, and would allow Kansas to stand alone of all the 50 states in the application of that doctrine. Accordingly, we choose not to apply *Ruth* to the facts of this case, and hold that the district court erred in refusing to permit appellants to intervene. We further hold that appellants have a lien on the proceeds of the malpractice settlement to the extent of the compensation, medical, and disability benefits they have paid to Roberts for disabilities and medical conditions caused and aggravated by malpractice.

This case is reversed and remanded to the district court to permit the intervention of appellants. The district court is instructed to determine the appropriate subrogation and lien rights of appellants in the proceeds of the malpractice settlement in a manner consistent with this opinion.

Reversed and remanded with instructions.