No. 63,171

DAVID E. ROBERTS, *Appellee*, v. JOHN J. KRUPKA, NEUROLOGICAL SURGERY, P.A., ST. FRANCIS REGIONAL MEDICAL CENTER, INC., JOHN HUGHES, D. RACETTE, WANDA TATE, SHERRY LOYD, VEVA EDWARDS, PAIN ANESTHESIA AND CRITICAL CARE SERVICES, P.A., JUDY APPLEBY, KENT COOPER, and JOHN HERED, *Defendants*, v. HIZEY WELL SERVICE & SUPPLY and U.S.F.&G. INSURANCE COMPANY, *Movants to Intervene/ Appellants*.

(790 P.2d 422)

Opinion filed April 13, 1990.

*Frederick L. Haag*, of Foulston & Siefkin, of Wichita, argued the cause and was on the brief for appellants.

*Kurt A. Harper*, of Sherwood, Hensley, Harper & Gregory, of Wichita, argued the cause and was on the brief for appellee.

*Steven L. Foulston*, of Wichita, was on the brief for *amicus curiae* Kansas Workers Compensation Fund.

The opinion of the court was delivered by

MCFARLAND, J.: Hizey Well Service and Supply (employer) and U.S.F.&G. Insurance Company (workers compensation insurer) appeal from the decision of the district court denying their motion to intervene in the medical malpractice action brought by David E. Roberts (employee) against John J. Krupka (physician) and other health care providers. The Court of Appeals reversed the district court (*Roberts v. Krupka*, 13 Kan. App. 2d 691, 779 P.2d 447 [1989]). The matter is before us on petition for review.

On November 2, 1982, Roberts and other Hizey employees were dismantling an oil tank battery. During the course of the work Roberts fell from a catwalk. On June 22, 1983, he underwent a posterior cervical laminectomy performed by Dr. John J. Krupka with the assistance of other physicians. On June 21, 1985, Roberts filed a medical malpractice action against Krupka and eleven other health care providers contending that as a result of medical malpractice he had sustained a permanent spinal cord injury.

Roberts had previously filed a workers compensation claim and, as of August 22, 1988, had received $55,808 in compensation and $120,424.32 in medical expenses. On August 19, 1988, Hizey and U.S.F.&G. moved to intervene in the medical malpractice action seeking to assert a lien against any malpractice recovery for all compensation benefits attributable to the malpractice. They also sought to implead the Workers Compensation Fund to recover from it any sums attributable to the malpractice in the event

they could not recover the same in the malpractice action. It should also be noted that Hizey and U.S.F.&G. were under an order of an administrative law judge to pay Roberts $204 per week and his medical expenses until such time as he was medically released to return to substantial and gainful employment.

Most of the defendant health care providers were dismissed from the action herein during the summer of 1988. On September 2, 1988, the district court approved the settlement of Roberts' claim against Krupka and Neurological Surgery, P.A. Jury trial of the case had been scheduled to commence September 20, 1988.

On the day of settlement, Hizey, U.S.F.&G., Roberts, and the settling defendants entered into a stipulation that the settlement hearing should proceed and that any payment received should be held in trust by plaintiff's counsel pending the outcome of the motion to intervene. On September 13, 1988, the court ordered plaintiff's counsel to hold $150,000 in trust for Roberts and U.S.F.&G. The remaining three defendants were dismissed from the action on September 19, 1988.

On November 4, 1988, the motion to intervene was denied and this appeal resulted.

Essentially, two questions are involved:

1. whether the motion to intervene was timely; and

2. whether the movants had a right to intervene.

The district court answered both questions in the negative. The Court of Appeals answered both questions in the affirmative. The matter is before us for decision.

In the usual situation it would be appropriate to determine the question of the timeliness of the motion first as it could be dispositive of the appeal.

As the Court of Appeals correctly noted in its opinion herein, the main thrust of the district court's decision was that there was no possibility the would-be intervenors could claim a subrogation interest in the settlement proceeds; hence, intervention was not allowed. Under these circumstances, we believe it appropriate to determine the substantive question first.

The district court's rationale in concluding that the employer and its insurance carrier could not prevail upon intervention rests upon two grounds:

1. *Ruth v. Witherspoon-Englar Co.*, 98 Kan. 179, 157 Pac. 403 (1916), specifically holds that benefits are not payable under the Workers Compensation Act for aggravated injury arising from negligent medical care; and

2. no right to subrogation is granted by K.S.A. 1989 Supp. 44-504(a) and (b) as the statute is limited to situations where the primary injury was caused by a third party as opposed to being aggravated or added to by a third party's subsequent negligent act.

In *Ruth*, plaintiff was injured during the course of his employment with the defendant. He filed two actions: (1) against his employer for benefits under the Workers Compensation Act; and (2) against his treating physician for malpractice and against his employer for failure to employ a competent physician. The workers compensation case was tried first and to a jury. The jury awarded Ruth $4,509.20, and the employer appealed. In reversing the judgment and remanding the case for a new trial, this court stated:

"The plaintiff was entitled to recover compensation based only upon such disability, total or partial, as resulted from the injury received in the course of his work, without the intervention of an independent agency. The matter is not confused by the need of determining what results might have been anticipated, or by any refined distinctions between proximate and remote causes, for whether and to what extent disability in such a case as the present has been increased by want of proper surgical care admits of ascertainment with reasonable definiteness and certainty. If it should be proved here, for instance, that the whole effects of the plaintiff's injury would under proper treatment have disappeared within a year, that would obviously be the limit of the period for which he could recover compensation in this action. His judgment here could not be increased by the fact that through the incompetent or negligent handling of the case by physicians a disability which would otherwise have been merely temporary was rendered permanent. (*Della Rocca v. Stanley Jones & Co.*, [1914] W. C. & Ins. Rep. 33, annotated in 6 N.C.C.A. 624.) Even if circumstances had been shown sufficient to charge the defendant with responsibility for the fault of the physicians, the rule would not be altered, for liability under the compensation act cannot be made to depend upon the degree of care exercised. A part of the loss occasioned by an accidental injury to a workman is cast upon the employer, not as reparation for wrongdoing, but on the theory that it should be treated as a part of the ordinary expense of operation. So much of an employee's incapacity as is the direct result of unskillful medical treatment does not arise 'out of and in the course of his employment' within

the meaning of that phrase as used in the statute (Laws 1911, ch. 218, § 1). For that part of his injury his remedy is against the persons answerable therefor under the general law of negligence, whether or not his employer be of the number. It was doubtless desirable that the malpractice issue should have been distinctly presented in the pleadings, but in any event it was incumbent on the plaintiff to show what degree and duration of incapacity was the direct result of the original injury received in the course of his work, without the intervention of an independent cause.

"2. The injury which the plaintiff received while at work for the defendant was the breaking of his leg between the hip and knee. A skiagraph shows a diagonal fracture, the ends of the bone having slipped past each other, a reunion taking place in that position, shortening the leg by about three inches. There was evidence that without a further operation, which would be attended with some danger, the plaintiff can make no use of his leg. But it can hardly be said that a finding was warranted that this condition was caused by the original injury. In his petition in the malpractice case (which had been dismissed as to the doctors, but was still pending as to the company) the plaintiff pleaded explicitly that the permanent character of his disability was due to the unskillful surgery to which he had been subjected. This allegation, being made in another case, was not absolutely conclusive upon him as an estoppel, but was quite persuasive as evidence. It seems clear that the jury did not attempt to distinguish between the effects of the original injury and those of the surgical treatment. The instructions referred in general terms to the disability incurred by reason of the accident, but submitted the issue of its duration without suggesting the possibility of this having been affected by malpractice, although the defendant, having asked no instruction on the point, is not in a position to rely on the omission as specific ground of error. We do not think there was a fair basis for a finding that the accident (apart from the results of malpractice) produced a permanent total disability, or that the jury intended so to find. In this situation a new trial is necessary." 98 Kan. at 181-82.

The holding in *Ruth* was followed in *Cooke v. Bunten*, 135 Kan. 558, 11 P.2d 1016 (1932).

As the Court of Appeals correctly noted, the *Ruth* case could be distinguished from the one before us. In *Ruth*, the employer was defending on the basis that its liability to plaintiff under the Workers Compensation Act was limited to the original injury and any disability naturally resulting therefrom. This court agreed and held it was error to permit the jury to consider aggravated disability arising from the alleged negligent treatment received by plaintiff. It should be noted that plaintiff Ruth had a second lawsuit pending against his employer seeking recovery for damages arising from employing an incompetent physician. In the

case before us, the employer and its carrier have paid, under an administrative law judge's order, all medical expenses and weekly compensation throughout the disability without regard to the effects of the alleged malpractice. By their attempted intervention, they are seeking to recoup from the settlement proceeds sums paid which are attributable to the malpractice. Nevertheless, the bulk of the 24-page Court of Appeals opinion is concerned with *Ruth* and the opinion concludes as follows:

"We have no express authority to overrule a decision of the Kansas Supreme Court, and emphasize that only that court may overrule its prior decisions. We believe in the doctrine of stare decisis and, by and large, that doctrine controls our decisions, governs our deliberations, and results in consistent applications of the law. However, the doctrine of stare decisis is not and cannot be an unbreakable chain to which we are bound forever. If it is that, the law cannot and will not grow or change, and cannot be modified to fit modern society.

"If we desired, we could easily distinguish *Ruth* on the facts since an entirely different factual scenario was presented here than was in *Ruth*. It could be pointed out that in this case the appellants are simply trying to recover funds which were ordered paid by an ALJ's order, while in *Ruth*, the employer was seeking to establish that it was not responsible for malpractice-induced aggravations. These factual distinctions are made in many instances and many times are made simply to avoid an absurd result dictated by an ancient decision.

"On due consideration, however, we choose not to rest our decision on some factual or technical distinction of facts between the cases. We are, on occasion, required to anticipate, and we do anticipate, what our Supreme Court might do or say if presented with an incongruous result based on an aging precedent which had not been considered for 57 years. We do so in this case and anticipate that the Supreme Court, if presented with this case, would overrule *Ruth* and place Kansas back in the union insofar as malpractice subrogation under workers compensation cases is concerned. We cannot imagine that the Kansas Supreme Court, upon hearing this appeal, would uphold the doctrine in *Ruth*, and would allow Kansas to stand alone of all the 50 states in the application of that doctrine. Accordingly, we choose not to apply *Ruth* to the facts of this case, and hold that the district court erred in refusing to permit appellants to intervene. We further hold that appellants have a lien on the proceeds of the malpractice settlement to the extent of the compensation, medical, and disability benefits they have paid to Roberts for disabilities and medical conditions caused and aggravated by malpractice.

"This case is reversed and remanded to the district court to permit the intervention of appellants. The district court is instructed to determine the appropriate subrogation and lien rights of appellants in the proceeds of the

malpractice settlement in a manner consistent with this opinion." 13 Kan. App. 2d at 704-05.

The Court of Appeals was incensed over what it perceived to be an impossible dilemma the *Ruth* decision placed upon injured workers like plaintiff. Here, plaintiff hired separate attorneys to represent him in each of the actions. The Court of Appeals believed this was the result of plaintiff being required to take inconsistent positions. In the workers compensation proceeding, plaintiff had to seek to tie all of his disability to the fall, and, in the malpractice action, to attribute his disability to the malpractice. Concern was also expressed over the double recovery the district court's decision permits.

The Court of Appeals reasoned:

"In the typical tort case in Kansas, it is not considered a defense to the tortfeasor that the physician, whose services plaintiff sought as a result of the tortfeasor's negligence, was likewise negligent and guilty of malpractice in his treatment of plaintiff, thereby increasing the damages. Even in workers compensation cases in Kansas we have taken the approach, and our Supreme Court has stated numerous times, that every consequence which flows from the injury, including a new and distinct injury, is compensable under the Act if it is a direct and natural result of the primary injury. See *Chinn v. Gay & Taylor, Inc.*, 219 Kan. 196, Syl. ¶ 1, 547 P.2d 751 (1976); *Bergemann v. North Central Foundry, Inc.*, 215 Kan. 685, Syl. ¶ 1, 527 P.2d 1044 (1974); *Jackson v. Stevens Well Service*, 208 Kan. 637, Syl. ¶ 1, 493 P.2d 264 (1972). We believe that the only exception to this well-established rule in Kansas is where the aggravation of the original injury is caused by the malpractice of the physician whom claimant has consulted and retained to treat his on-the-job injuries; this exception is based upon the holding in *Ruth*.

"To illustrate the state of the law in our sister jurisdictions, we quote from 1 Larson's Workmen's Compensation Law § 13.21 (1989):

" 'It is now uniformly held that aggravation of the primary injury by medical or surgical treatment is compensable. Examples include exacerbation of the claimant's condition, or death, resulting from antibiotics, antitoxins, sedatives, pain-killers, anesthesia, electrical treatments, or corrective or exploratory surgery.

" 'Fault on the part of the physician, such as faulty diagnosis, improper administration of anesthesia, or a slip of the surgeon's knife, even if it might amount to actionable tortiousness, does not break the chain of causation.'

"That statement by Larson is largely correct but should contain a disclaimer. The statement should properly read that 'it is now uniformly held, everywhere but in the State of Kansas.'

"In 82 Am. Jur. 2d, Workmen's Compensation § 37, it is stated: 'According to most authorities, unskillful or improper treatment, or malpractice, does not constitute an independent, intervening cause within the operation of the foregoing rules, but some hold to the contrary.'

"In the footnote in Am. Jur. 2d supporting the statement that some cases hold to the contrary of the general rule, *Ruth* is the only case cited as taking a position contrary to most authorities. In short, Kansas stands alone in its application of the rule laid down in *Ruth.*" 13 Kan. App. 2d at 701-02.

The Court of Appeals then traced the evolution of a holding similar to *Ruth* through the Minnesota Supreme Court, where it was ultimately rejected, stating:

"The Minnesota trilogy ended with the decision in *Williams v. Holm,* 288 Minn. 371, 181 N.W.2d 107 (1970), which is very similar to the case at bar. In *Williams*, the employer-insurer had paid additional benefits and medical expenses for an employee's injury which was caused by the malpractice of the physician in treating the original injury. The issue in that case was, as it is here, the right of the employer-insurer to intervene and subrogate to the malpractice recovery. The stumbling block in Minnesota was the *McGough* [*v. McCarthy Improvement Co.,* 206 Minn. 1, 287 N.W. 857 (1939)] decision to the same extent as the *Ruth* decision is the stumbling block in the case before this court. The Minnesota Supreme Court, in deciding to end the duplicity and the distinguishing of cases on facts in order to get around absurd results dictated by *McGough*, stated:

" 'The Workmen's Compensation Act makes no distinction between the tort of malpractice and any other tort in allowing subrogation to a compensation carrier who is required by law to pay benefits and medical expenses to and for an employee who has received an aggravation of an old injury or additional injury under the circumstances present in the instant case or those present in *Thibault* [*v. Bostrom,* 270 Minn. 511, 134 N.W.2d 308 (1965)]. Nor do we see any reason for distinguishing this case from *Thibault.*

" 'Consequently, we overrule the *McGough* case and join the majority, if not all, of the courts in the United States, in holding that there is a right of subrogation under statutes and fact situations similar to the applicable statute and facts in this case. To rule otherwise would be inequitable and would permit double recovery by the employee.' 288 Minn. at 374." 13 Kan. App. 2d at 703-04.

The second ground relied on by the district court is related to the *Ruth* decision.

K.S.A. 1989 Supp. 44-504(a) and (b) provides:

"(a) When the injury or death for which compensation is payable under the workers compensation act was caused under circumstances creating a legal liability against some person other than the employer or any person

in the same employ to pay damages, the injured worker or the worker's dependents or personal representatives shall have the right to take compensation under the workers compensation act and pursue a remedy by proper action in a court of competent jurisdiction against such other person.

"(b) In the event of recovery from such other person by the injured worker or the dependents or personal representatives of a deceased worker by judgment, settlement or otherwise, the employer shall be subrogated to the extent of the compensation and medical aid provided by the employer to the date of such recovery and shall have a lien therefor against such recovery and the employer may intervene in any action to protect and enforce such lien. Whenever any judgment in any such action, settlement or recovery otherwise is recovered by the injured worker or the worker's dependents or personal representative prior to the completion of compensation or medical aid payments, the amount of such judgment, settlement or recovery otherwise actually paid and recovered which is in excess of the amount of compensation and medical aid paid to the date of recovery of such judgment, settlement or recovery otherwise shall be credited against future payments of the compensation or medical aid. Such action against the other party, if prosecuted by the worker, must be instituted within one year from the date of the injury and, if prosecuted by the dependents or personal representatives of a deceased worker, must be instituted within 18 months from the date of such injury."

The right to subrogation thus is limited to situations where "compensation is payable." The district court reasoned that, inasmuch as *Ruth* held compensation was not payable for the aggravation arising from the alleged malpractice, subrogation did not exist to recover the compensation actually paid herein. Further, the district court construed "the injury" in K.S.A. 1989 Supp. 44-504 to be limited to the original on-the-job injury. Inasmuch as the malpractice injury occurred later, it was not included in the statute.

We conclude the district court was too restrictive in its statutory interpretation. The on-the-job injury was the cause of plaintiff being exposed to the risk of malpractice. As we held in *Chinn v. Gay & Taylor, Inc.*, 219 Kan. 196, Syl. ¶ 1, 547 P.2d 751 (1976):

"When a primary injury under the workmen's compensation act is shown to have arisen out of the course of employment every natural consequence that flows from the injury, including a new and distinct injury, is compensable if it is a direct and natural result of a primary injury."

Granted, *Chinn* involves an employee who had injured a knee and his resultant limping gait created a back problem. No ad-

ditional negligent acts by third parties were involved. We do not believe the result in *Chinn* should be different if a negligent diagnosis had been made and the permanent back injury could have been avoided by early medical intervention, or if it had been made worse by a negligent surgical procedure. In any of these three *Chinn* scenarios, the initial job-caused injury set the causation ball rolling which resulted in the additional permanent injury.

There are practical reasons for avoiding the statutory interpretation made by the district court. The employee who is injured on the job and becomes a victim of medical malpractice is off work and accumulating medical bills. His or her economic needs and that of his or her family continue on a daily basis. Roberts was injured on the job on November 2, 1982. The malpractice suit was concluded in September of 1988. Had the case not been settled and gone to jury trial, the time period including determination of an appeal could have been considerably extended. If the employer cannot recoup benefits paid for disability arising from the malpractice from the settlement or judgment, then it behooves the employer and its carriers to cut off benefits as soon as possible. To do this the claims of malpractice would, in essence, have to be determined initially in the workers compensation proceeding—a highly impractical procedure which could result in the employee being shorted or granted a double recovery if inconsistent results were obtained in the two types of proceedings. We have long held workers compensation statutes are to be liberally construed to effect legislative intent and award compensation to a worker where it is reasonably possible to do so. If the district court fails in its application of this rule of construction, this court has the duty to correct that failure. *Poole v. Earp Meat Co.*, 242 Kan. 638, Syl. ¶ 3, 750 P.2d 1000 (1988).

After careful consideration, we conclude:

1. Where an injury is compensable under the Workers Compensation Act (K.S.A. 44-501 *et seq.*), any aggravation of that injury or additional injury arising from medical malpractice in the treatment thereof is a consequence of the primary injury and compensable under the Act. Any language in *Ruth v. Witherspoon-Englar*, 98 Kan. 179, and *Cooke v. Bunten*, 135 Kan. 558, inconsistent with this holding is overruled.

2. Where an employer has paid workers compensation benefits to an injured worker which are attributable to aggravation of the primary injury or an additional injury arising from medical malpractice in the treatment of the primary injury, K.S.A. 1989 Supp. 44-504 grants subrogation rights to the employer and its insurance carrier to recoup such sums from any recovery by the injured worker from the negligent health care provider.

3. The district court erred in holding Hizey and U.S.F.&G. had no subrogation rights to recoup from Roberts' settlement benefits paid herein which are attributable to the malpractice.

We turn now to the question of the propriety of the district court's determination that the motion to intervene filed by Hizey and U.S.F.&G. was untimely.

K.S.A. 60-224(a) provides:

"Upon timely application anyone shall be permitted to intervene in an action: (1) When a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter substantially impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

K.S.A. 60-224(a) should be liberally construed in favor of intervention. *In re Petition of City of Shawnee for Annexation of Land*, 236 Kan. 1, 11, 687 P.2d 603 (1984); *Campbell American Legion v. Wade*, 210 Kan. 537, Syl. ¶ 1, 502 P.2d 773 (1972).

We have previously held Hizey and U.S.F.&G. had a valid right of subrogation which gives them a right to intervene unless their application is untimely. The district court held that the passage of nearly 38 months between the filing of the action herein and the filing of the motion to intervene rendered the motion untimely. As previously stated, the bulk of the district court's decision related to its conclusion the would-be intervenors had no right of subrogation.

There was no evidence the delay in filing prejudiced the plaintiff in any way. The situation herein is not one where late intervention would result in additional discovery or delay of trial. The intervenors' only interest was in any recovery made and did not concern the issues between plaintiff and defendants. Had the intervenors come in at the beginning of the litigation, their role

would have been one of passive attendance at discovery proceedings, hearings, etc. Their counsel would have just been one more individual to notice up as to proceedings. There is no indication in the record plaintiff or his counsel was unaware of the intervenors' claims or that the delay in formal intervention affected, in any way, the handling of plaintiff's case. In fact, the evidence in this regard is to the contrary. Practically speaking, the intervenors had no reason to seek formal intervention until such time as recovery by plaintiff was approaching realization. They filed their motion on August 19, 1988. The trial was scheduled to commence September 20, 1988.

Under the circumstances herein, we conclude the district court's determination that the motion to intervene was not timely filed was arbitrary.

The judgment of the Court of Appeals is affirmed and the judgment of the district court is reversed. The case is remanded to the district court for further proceedings consistent with this opinion.

SIX, J., not participating.